HAMED v WAYNE COUNTY

Docket No. 278017. Submitted June 3, 2009, at Detroit. Decided July 7, 2009, at 9:00 a.m.

Tara K. Hamed brought an action in the Wayne Circuit Court against Wayne County, the Wayne County Sheriff's Department, former Wayne County sheriff's deputy Reginald Johnson, and others after she was subjected by Johnson to unwelcome sexual contact during her detention at the Wayne County Jail. The court allowed the plaintiff to amend her complaint to assert a claim of sexual harassment under the Civil Rights Act, MCL 37.2103(i), and subsequently denied a motion by the county and the sheriff's department (hereafter the defendants) to strike the allegations in the amended complaint on the asserted ground that the allegations contradicted the plaintiff's prior statements at an internal affairs interview, her deposition, and Johnson's trial for criminal sexual conduct. The court, Michael F. Sapala, J., also granted partial summary disposition for the defendants with respect to the plaintiff's claim of quid pro quo sexual harassment. The plaintiff appealed, and the defendants cross-appealed.

The Court of Appeals *held*:

1. The trial court erred by ruling that the defendants could not be found liable for quid pro quo sexual harassment under a theory of respondeat superior. MCL 37.2103(i) provides that discrimination because of sex includes sexual harassment. The statute defines "sexual harassment" as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under three conditions, one of which relates to quid pro quo sexual harassment and is relevant to this case: submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing. Employers are vicariously liable for acts of quid pro quo sexual harassment committed by their employees when those employees use their supervisory authority to perpetrate the harassment. The plaintiff in this case has stated a viable claim of quid pro quo sexual harassment against the defendants by alleging that Johnson subjected her to unwanted sexual conduct under

circumstances that suggested that her treatment in jail, a public service, depended on whether she submitted to Johnson's conduct and by alleging that Johnson used his supervisory authority over her to perpetrate the harassment.

2. MCL 37.2301(b) of the Civil Right Act defines "public service" to exclude a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment. That exclusion does not apply in this case. The defendant was in the Wayne County Jail not to serve a sentence, but to await processing on a bench warrant.

3. The trial court did not abuse its discretion by allowing the plaintiff to amend her complaint and by denying the defendant's motion to strike the allegations in the amended complaint. The record does not support the defendant's assertion that the plaintiff acted in bad faith or with dilatory motives in amending the complaint to add a discrimination claim and that the defendants suffered prejudice. The allegations in the amended complaint do not contradict the plaintiff's prior statements such that the allegations should be stricken.

Reversed and remanded for further proceedings.

CIVIL RIGHTS — SEXUAL HARASSMENT — PUBLIC SERVICES — QUID PRO QUO SEXUAL HARASSMENT — COUNTY JAIL DETAINEES — RESPONDEAT SUPERIOR.

A county jail and its sheriff's department can be held liable under a theory of respondeat superior for quid pro quo sexual harassment in the provision of a public service if a sheriff's deputy with supervisory authority over jail detainees makes an unwelcome sexual advance to, requests a sexual favor of, or engages in other verbal or physical conduct or communication of a sexual nature toward or with a person detained in jail for a reason other than to serve a sentence of incarceration if the advance, request, conduct, or communication is made under circumstances suggesting that compliance by the detainee will result in favorable treatment of the detainee (MCL 37.2103[i][ii], 37.2301[b]).

*Gentry Law Offices, P.C.* (by *Kevin S. Gentry*), for Tara K. Hamed.

*Zausmer, Kaufman, August, Caldwell & Tayler, P.C.* (by *Carson J. Tucker*), for Wayne County and others.

Before: BORRELLO, P.J., and METER and STEPHENS, JJ.

PER CURIAM. In this action arising from alleged viola-
tions of the Michigan Civil Rights Act (CRA), plaintiff,
Tara K. Hamed, appeals as of right the trial court's
April 10, 2007, order granting partial summary dispo-
sition to defendants Wayne County and Wayne County
Sheriff's Department (the department) with respect to
plaintiff's claims for hostile environment sexual harass-
ment and "application of county rules, policies and
procedures." Plaintiff also appeals as of right the trial
court's April 26, 2007, order granting summary dispo-
sition to Wayne County and the department with re-
spect to plaintiff's claim for quid pro quo sexual harass-
ment. Wayne County and the department's cross-
appeal, arguing that the trial court erred by denying
their motion to strike allegations in plaintiff's amended
complaint and by rejecting some of their alternative
arguments in support of summary disposition. We re-
verse and remand for further proceedings.

### I. FACTUAL BASIS FOR THE CAUSE OF ACTION

Plaintiff was arrested on an outstanding warrant
for unpaid child support in Livingston County on or
around September 7, 2001. The Livingston Circuit
Court ordered her to serve 45 days in the Livingston
County Jail, subject to release upon payment of
$1,500. The court did not immediately order her into
custody, but instead ordered her to check into an
inpatient substance abuse treatment program and to
report to the Livingston County Jail on September
14, 2001, to serve her term, unless she was in a drug
treatment program.

On the night of September 7 to 8, 2001, Livingston
County officials transferred her to the custody of Wayne
County deputy sheriffs, who transported her to the
Wayne County Jail pursuant to outstanding warrants

for probation violation. When the officers arrived with plaintiff at the Wayne County Jail, they realized that Deputy Reginald Johnson was alone on duty in the male registry area. Jail regulations require the attendance of a female deputy when female inmates are present. The transporting officers contacted Sergeant Kenneth Dawwish to advise him of the situation. He permitted them to leave plaintiff alone with Johnson.

After the transporting officers left, Johnson kept plaintiff with him in the command "bubble" instead of placing her in a cell. He allegedly commented to plaintiff that he could "help" her and that she would be "indebted" to him for his help. Plaintiff's complaint avers that she interpreted Johnson's comments as an offer of favorable treatment in exchange for sexual favors. Johnson placed her in Cell No. 2 without locking the door, but, for no apparent reason, switched her to Cell No. 7, which was dark and infested with cockroaches. Plaintiff allegedly begged him to let her out. Johnson asked plaintiff whether she would be a "good girl" before he released her from Cell No. 7. He then directed her into a private office that was closed to inmates and outside the range of surveillance cameras. Johnson sexually assaulted plaintiff inside the office. He partially removed her clothes and fondled her breasts and buttocks. He ejaculated on her clothing and made an unsuccessful attempt to sexually penetrate her. Afterward, a female officer, apparently unaware of the assault, escorted plaintiff to the women's area of the jail.

Plaintiff reported the incident to the department's officials, and the department later terminated Johnson's employment. He was subsequently convicted of criminal sexual conduct. Defendants do not dispute that Johnson sexually assaulted plaintiff inside the jail,

although they challenge her allegations regarding the details of the events preceding the assault.

## II. RESPONDEAT SUPERIOR LIABILITY

On appeal, plaintiff first claims that the trial court erred by determining that Wayne County and the department could not be found liable under a theory of respondeat superior. We agree with plaintiff.

This Court reviews de novo a trial court's resolution of a summary disposition motion. *Reed v Breton*, 475 Mich 531, 537; 718 NW2d 770 (2006). Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). The reviewing court accepts all well-pleaded factual allegations as true and construes them in a light most favorable to the nonmoving party. *Id.* The motion may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.*

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Wilson v Alpena Co Rd Comm*, 474 Mich 161, 166; 713 NW2d 717 (2006). When ruling on a motion brought under MCR 2.116(C)(10), the trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Reed, supra* at 537. The moving party is entitled to judgment as a matter of law if the proffered evidence fails to establish a genuine issue of material fact. *Id.*

The question raised here is whether the rule of strict vicarious liability for employers, applicable in quid pro quo sexual harassment cases in the employment dis-

crimination context, also applies to quid pro quo sexual harassment arising from the provision of public accommodations and public services when the harassment consists of a sexual assault. This is a question of first impression in Michigan.

The CRA defines discrimination based on sex to include sexual harassment. MCL 37.2103(i) defines sexual harassment as follows:

> (i) Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment, public accommodations or public services, education, or housing.
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment, public accommodations or public services, education, or housing.
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment.

This definition is generally applicable to all provisions of the CRA and does not differentiate between discrimination in employment, public accommodations, or public services.

Sexual harassment that falls within subsection *i* or *ii* of this definition is known as quid pro quo harassment. Sexual harassment that falls within subsection *iii* is known as hostile environment sexual harassment. *Chambers v Trettco, Inc*, 463 Mich 297, 310; 614 NW2d

910 (2000). In order to establish a claim of quid pro quo harassment in the employment context, a plaintiff must demonstrate (1) that she was subjected to unwelcome sexual conduct or communication as described in the statute and (2) that her employer or the employer's agent used her submission to or rejection of the unwanted conduct as a factor in a decision affecting her employment. *Id.* at 310. By analogy, a plaintiff claiming quid pro quo harassment in the context of public accommodations or public services must show that the provider of those services or accommodations, or the provider's agent, used her submission to or rejection of the unwanted conduct as a factor in a decision affecting the plaintiff's access to the public services or accommodations.

Plaintiff alleged that Johnson subjected her to unwanted sexual conduct under circumstances that suggested that her treatment as an inmate would depend on whether she submitted to that conduct. She alleged that Johnson fraternized with her by talking about having a close personal relationship with her in which she would be "indebted" to him upon her release. Johnson moved her to an uncomfortable cell and asked her whether she would be a "good girl" before he released her. He did not refer her to a female deputy or the female area of the jail until after he sexually assaulted her. These allegations permit an inference that his treatment of plaintiff in the jail would depend on whether she complied with his request for sexual favors, and the complaint therefore sufficiently alleges quid pro quo sexual harassment. *Chambers, supra* at 310-311. While defendants challenge certain aspects of plaintiff's amended pleading, they do not argue that plaintiff failed to allege facts in support of these elements. Instead, they argue that plaintiff failed to establish their vicarious liability for Johnson's conduct.

The parties' primary dispute arises from their conflicting views regarding the application of *Champion v Nation Wide Security, Inc*, 450 Mich 702; 545 NW2d 596 (1996), and *Zsigo v Hurley Med Ctr*, 475 Mich 215; 716 NW2d 220 (2006). In *Champion* our Supreme Court held that a supervisor's sexual assault of a subordinate employee is a form of quid pro quo sexual harassment and that the employer is liable for the supervisor's conduct where the assault is "accomplished through the use of the supervisor's managerial powers." *Champion, supra* at 704. The Court clarified its holding by stating that it did not "extend *unlimited* liability to employers whose supervisors rape subordinates." *Id.* at 713 (emphasis added). The Court reiterated that it held employers strictly liable only "where the supervisor accomplishes the rape through the exercise of his supervisory power over the victim." *Id.* at 714. The Court concluded, "[W]e adopt the nearly unanimous view that imposes strict liability on employers for quid pro quo sexual harassment committed by supervisory personnel." *Id.* at 712.

On appeal, defendants contend that *Champion* does not control this matter because the decision in *Champion* was subsequently weakened by the Supreme Court's decision in *Zsigo*. In concluding that the supervisor in *Champion* could be held vicariously liable, the *Champion* Court cited 1 Restatement Agency, 2d, § 219(2)(d). *Champion, supra* at 712 n 6. In *Zsigo*, the Supreme Court explained that *Champion*'s reference to 1 Restatement Agency, 2d, § 219(2)(d), did not qualify as an adoption of that provision. The Supreme Court stated:

> The reference to "Restatement Agency, 2d, § 219(2)(d)" in footnote six of *Champion* may have contributed to appellate court confusion about whether this Court adopted the aided by the agency exception to employer nonliability under the doctrine of respondeat superior. We

> now clarify that the reference to § 219(2)(d) in *Champion*, *supra*, was made only in passing and on the basis of the very distinct facts of that civil rights matter. We did not, by that reference, adopt § 219(2)(d). The Court of Appeals erred in finding that this Court affirmatively adopted the "aided by the agency relationship" exception to liability under the respondeat superior doctrine set forth in Restatement Agency, 2d, § 219(2). [*Zsigo, supra* at 223-224.]

The Court noted that, according to *Champion*, "even in the context of quid pro quo sexual harassment, the sexual assault must be 'accomplished through the use of the supervisor's managerial powers.' " *Id.* at 224 n 19, quoting *Champion, supra* at 704.

The *Zsigo* Court, while rejecting the application of agency principles from 1 Restatement Agency, 2d, § 219(2)(d), continued to find that strict liability applies to employers whose managers misuse their managerial authority to commit sexual assaults on subordinates. This Court is asked to determine if this strict liability analysis of *Champion* is applicable to the circumstances presented in this case.

Defendants misread *Zsigo* as overruling *Champion*. The *Zsigo* Court clearly articulated that it was not overruling *Champion* because *Champion*'s holding was not based on 1 Restatement Agency, 2d, § 219(2)(d). The Court in *Zsigo* explained:

> The dissent contends that the *Champion* Court implicitly adopted § 219(2)(d) and did not limit its application. We note, to the contrary, that the *Champion* holding was carefully crafted to apply only in the context of quid pro quo sexual harassment under MCL 37.2103(i). Specifically, the Court stated:

> "In this case, we must decide whether an employer is liable for quid pro quo sexual harassment under *MCL 37.2103(i)* . . . where one of its employed supervisors rapes a subordinate and thereby causes her constructive dis-

charge. We hold that an employer is liable for such rapes where they are accomplished through the use of the supervisor's managerial powers. We believe that this result best effectuates the remedial purpose of the Civil Rights Act, MCL 37.2101 et seq. . . . ." [*Champion, supra* at 704-705 (emphasis added).]

Thus, even in the context of quid pro quo sexual harassment, the sexual assault must be "accomplished through the use of the supervisor's managerial powers." *Id.* This limited exception clearly does not apply to the facts in this case. [*Zsigo, supra* at 224 n 19.]

In other words, the offender in quid pro quo sexual harassment does not merely use his employment or agency as an opportunity to exploit the victim sexually (as did the nursing assistant in *Zsigo*); rather, his authority over the subordinate is the tool that is instrumental and integral in his commission of the sexual exploitation. The nursing assistant in *Zsigo* did not use authority delegated by his employer to render the plaintiff vulnerable to his abusive conduct. He merely seized the opportunity that arose when he was alone with a restrained patient who was not capable of acting in her own best interests. In contrast, the supervisor in *Champion* used his authority as a means of committing the assault. He selected the plaintiff to be the only security guard with him in the hospital and offered to use his authority to her advantage if she granted him sexual favors. When she refused, he used his managerial authority to direct her to an isolated area where he could lock her in a room, cut her off from outside help, and force himself on her. *Champion, supra* at 706-707. The *Zsigo* Court recognized a distinction between seizing an opportunity to commit unlawful conduct and using one's authority over a subordinate as a means of subjecting that subordinate to abusive and unlawful conduct. *Zsigo, supra* at 224 n 19.

In the instant case, Johnson did not merely use his position to find opportunities to commit a sexual assault against a female inmate; he used his authority as a turnkey to exploit her sexually. As the sole deputy in charge of plaintiff, Johnson had both physical power and legal authority over her. He alone had the authority to decide when she would be referred to the female area of the prison. He could use his authority to decide which cell plaintiff would be placed in and to direct her around the jail. Plaintiff's amended complaint pleads facts sufficient to support a claim that Johnson's managerial authority was an instrumental and integral tool in perpetrating the sexual assault.

Defendants also argue that *Champion* applies only to employment discrimination actions arising under article 2 of the CRA. This argument is clearly inconsistent with the plain language of MCL 37.2103(i), in which each of the three categories of sexual harassment is expressly defined as applying to "employment, public accommodations or public services, education, or housing." As this Court held in *Diamond v Witherspoon*, 265 Mich App 673, 685; 696 NW2d 770 (2005), "the plain language of the CRA includes situations outside the realm of employment where an individual's access to public accommodations or public services is affected." As an inmate in the Wayne County Jail, plaintiff was entitled to the public service of being treated in accordance with her constitutional rights and with jail regulations. Johnson's exploitation of her status deprived her of this service.

Defendants also argue that public accommodations and public services claims are distinguishable from employment discrimination claims because the public accommodations or public services provisions of the CRA, "unlike the employment discrimination provi-

sions, make no reference whatsoever to agents or agency principles." Defendants do not cite any provisions of the CRA, but they presumably refer to the definition of "employer" in MCL 37.2201(a) as "a person who has 1 or more employees, and includes an agent of that person." In contrast, MCL 37.2301 defines "place of public accommodation" and "public service" as follows:

> (a) "Place of public accommodation" means a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. . . .

> (b) "Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment.

The absence of any reference to agents in these definitions cannot reasonably be construed as an omission of agency principles from the public accommodations and public services provisions of the CRA. The definition of "employer" in MCL 37.2201 reflects that an employer might be an individual person or an entity such as a corporation, whereas the definitions of "place of public accommodation" and "public service" in MCL 37.2301 reflect that such entities are not individuals. Indeed, if the absence of a reference to agents in MCL 37.2301 were construed as an omission of agency principles from the entire article, only individual defendants could be held liable for discrimination in the provision of public services or accom-

modations, thus exempting the vast majority of providers who can only function through the actions of individuals.

We therefore conclude that plaintiff established a valid claim for quid pro quo sexual harassment under article 3 of the CRA and that the trial court erred by granting summary disposition for defendants on the ground that Johnson acted outside the scope of his authority when he sexually assaulted plaintiff. Employers are vicariously liable for acts of quid pro quo sexual harassment committed by their employees when those employees use their supervisory authority to perpetrate the harassment. Evidence was presented that Johnson used his authority as a sheriff's deputy to exploit plaintiff's vulnerability, thereby subjecting defendants to vicarious liability for his conduct.

### III. PUBLIC SERVICES UNDER THE CRA

Defendants assert that the trial court erred when it concluded that plaintiff was not an "individual serving a sentence of imprisonment" and, therefore, was not excluded from the scope of the CRA. We disagree.

Defendants argue that the Wayne County Jail does not provide a public service within the meaning of article 3 of the CRA. Defendants argue that the statutory definition of "public service" within the CRA expressly excludes claims of CRA violations by individuals serving a sentence of imprisonment where those claims arise from actions and decisions regarding their incarceration. MCL 37.2301(b) defines "public service" as follows:

> "Public service" means a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, *except that public*

*service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment.* [Emphasis added.]

The Legislature added the emphasized clause in 1999, effective March 10, 2000. See 1999 PA 202.

Defendants contend that plaintiff was serving a sentence of imprisonment in a county correctional facility and, therefore, is not entitled to raise a claim of discrimination in the provision of a public service with regard to her treatment in the jail. Defendants emphasize that plaintiff was brought to the Wayne County Jail after the Livingston Circuit Court ordered her to serve 45 days in jail. The trial court rejected this argument because plaintiff was not brought to the Wayne County Jail to serve a sentence, but for processing in matters unrelated to the Livingston County matter. On cross-appeal, defendants argue that the trial court erred in its interpretation and application of MCL 37.2301(b).

This issue raises a question of statutory interpretation. When faced with questions of statutory interpretation, courts must discern and give effect to the Legislature's intent as expressed in the words of the statute. *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). Where the language is unambiguous, it must be presumed that the Legislature intended the meaning clearly expressed, and no further judicial interpretation is permitted. *Id.* Terms that are not defined in a statute must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary definition for those meanings. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).

The exception in MCL 37.2301(b) does not encompass all legally incarcerated persons. Rather, it encompasses only those who are "serving a sentence of im-

prisonment" in a state or county correctional facility. Defendants concede that the exclusionary phrase in MCL 37.2301(b) does not exclude all individuals legally detained in a correctional facility. In oral arguments, they further conceded that pretrial detainees are not within the ambit of MCL 37.2301(b). Although defendants implicitly argued in the trial court that the statute provides a blanket exception for correctional facilities, they have abandoned that argument on appeal. Defendants concede that plaintiff would not come within the exclusionary clause of MCL 37.2301(b) if the sole reason for her incarceration in the Wayne County Jail was to await disposition of alleged probation violation charges. Defendants cite *People v Monasterski*, 105 Mich App 645; 307 NW2d 394 (1981), in which this Court held that the time constraints of the Interstate Agreement on Detainers Act, MCL 780.601 *et seq.*, were not applicable to the defendant there because the statute applied only where a defendant was serving a term of imprisonment in the sending state. The Court concluded that the defendant was not serving a term of imprisonment in the sending state because he was in custody in that state pending prosecution on criminal charges. *Id.* at 652-653.

Defendants instead argue that plaintiff here was an individual serving a sentence of imprisonment within the meaning of the statute because she was serving a sentence imposed by the Livingston Circuit Court. We reject this argument. The Livingston Circuit Court order is a standard court form entitled "Support Enforcement Order." The trial court checked the paragraph that reads:

> The payer shall be committed to 45* days in the county jail, to be released upon payment of $1,500 to the county sheriff, friend of the court, or clerk of the court as appro-

priate. The sum shall be applied as directed by the friend of
the court.

The numbers and the asterisk were handwritten on
blank lines. The asterisk refers to a handwritten para-
graph that provides:

> Pltf to be released today & to check into inpt treatment
> program by 9-14-01 at 5:00 pm/if not in program Pltf to
> report to Jail on 9-14 at 5:00 to serve 45 days w/$1,500
> release payment.

Although defendants characterized this matter as a "pro-
bation violation" at the summary disposition hearing, it is
clear from the order that plaintiff was ordered to serve jail
time for failing to comply with a child support order.
Consequently, we conclude that the order is properly
classified as a penalty for contempt of court. See MCL
552.625, MCL 552.631, MCL 552.633, and MCL 600.1715.

The record does not support a finding that plaintiff
was serving a term of imprisonment when she was in
the Wayne County Jail. She had been found guilty of not
complying with a valid court order, and the court
fashioned a penalty that, even if it characterized as a
term of imprisonment, was not set to begin until
September 14, 2001, seven days after she was sexually
assaulted while awaiting disposition on a Wayne County
bench warrant. Plaintiff was not transported to the
Wayne County Jail to serve the 45-day term, but for
processing in unrelated matters. In addition to being
prospective, the imprisonment portion of the Living-
ston order was conditional. She was not scheduled to
begin the 45-day sentence unless she had not paid the
$1,500 and had not entered an inpatient drug treat-
ment program before September 14, 2001. There is no
indication in the record that the Livingston Circuit
Court would credit her time served in Wayne County
toward the 45-day term. The Livingston County order

does not reference the Wayne County Jail at all. Apparently a check of the Law Enforcement Information Network was done on plaintiff, and an outstanding Wayne County warrant was discovered. Subsequently, plaintiff was surrendered to Wayne County officers for disposition of that warrant. Under these circumstances, we cannot conclude that plaintiff was serving a sentence of imprisonment in the Wayne County Jail. Consequently, the exclusion of correctional facilities from the definition of public services with respect to actions and decisions regarding an individual serving a sentence of imprisonment does not apply to plaintiff.

We note that defendants also argue that the trial court's interpretation of MCL 37.2301(b) is inconsistent with the Legislature's intent. When the Legislature amended MCL 37.2301(b), it chose to do so by designating a particular class of incarcerated persons, those serving sentences of imprisonment, as persons excluded from the protections of the CRA with respect to actions and decisions regarding their incarceration. The 1999 amendment represents the first legal demarcation between incarcerated persons serving sentences of imprisonment and other categories of detainees for purposes of determining whether a correctional facility is a public service under MCL 37.2301(b).

Under these circumstances, there is no basis for interpreting the 1999 amendment as having any meaning other than that expressed by the plain and unambiguous statutory language: "public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment." Attempting to broaden the scope of the limitation by extending it to incarcerated persons who are not serving sentences of imprisonment would violate the clear rules of statutory

construction prohibiting deviations from clear and unambiguous statutory language. *Pohutski, supra* at 683. Broadening the scope of the restriction would also violate the well-established maxim *expressio unius est exclusio alterius,* meaning that the "express mention in a statute of one thing implies the exclusion of other similar things." *Ross v Blue Care Network of Michigan,* 480 Mich 153, 184; 747 NW2d 828 (2008). "So well established is this maxim that it can be assumed that legislators are fully aware the courts will utilize it when construing their words." *Id.* The Legislature included one class of incarcerated persons in its restriction, thereby leaving out other classes of incarcerated persons. The fact that the Legislature's amendment was prompted by a judicial interpretation that was deemed contrary to legislative intent does not provide any basis for deviating from the established principles of applying clear and unambiguous language as written, or from inferring that the Legislature intended any meaning different from that expressed in the statutory language.

In sum, the trial court did not err by concluding that the Wayne County Jail was providing a public service to plaintiff because her action alleging a civil rights violation did not arise from defendants' actions or decisions regarding an individual serving a sentence of imprisonment. Plaintiff was not serving a sentence of imprisonment in the Wayne County Jail. Although she had recently been sentenced to serve 45 days in the Livingston County Jail, and although she was conditionally required to report to the Livingston County Jail to begin that sentence the following week, she was not detained in the Wayne County Jail in relation to the Livingston County court order. Further, because we determine that the trial court did not err in its holding regarding the public service component of the CRA, we need not address whether the trial court erred in its

holding regarding the public accommodations component of that statute. The trial court was precluded from granting defendants summary disposition regardless of whether the Wayne County Jail was a place of public accommodation.

IV. ALLEGATIONS IN THE AMENDED COMPLAINT

Finally, defendants allege that the trial court erred by allowing plaintiff to amend her complaint and by denying defendants' motion to strike the allegations that appeared in the amended complaint. We disagree.

This Court reviews a trial court's decision to grant or deny a motion to amend a complaint for abuse of discretion. *Shember v Univ of Michigan Med Ctr*, 280 Mich App 309, 314; 760 NW2d 699 (2008). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Id.* This issue also involves the trial court's denial of defendants' motion to strike pleadings in plaintiff's verified amended complaint. This Court reviews a trial court's decision regarding a motion to strike a pleading pursuant to MCR 2.115 for abuse of discretion. *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003).

Defendants argue that plaintiff acted in bad faith and with dilatory motives in belatedly amending her claim to add a claim of discrimination arising under the CRA. Defendants contend that plaintiff materially changed her allegations, and deviated from her previous sworn testimony, in order to manufacture a claim of sexual harassment. This argument mirrors the arguments that defendants raised in their motion to strike the allegations in plaintiff's verified amended complaint.[1] Defendants argued in that motion that various allega-

---

[1] MCR 2.115(B) provides:

tions in plaintiff's amended verified complaint should have been stricken because they contradicted plaintiff's prior sworn testimony in her deposition, at Johnson's criminal trial, and in her interview with an internal affairs investigator. These primarily relate to statements that Johnson made to plaintiff, plaintiff's response to Johnson's statements, and whether Johnson locked the door of Cell No. 7.

Defendants' argument that an amended pleading should be disallowed or stricken on the basis of prior inconsistent testimony derives from principles regarding summary disposition under MCR 2.116(C)(10). These principles preclude a party or witness from creating a factual dispute in avoidance of summary disposition by submitting an affidavit that contradicts his or her own sworn testimony or prior conduct. *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006). By analogy, a plaintiff should not be permitted to amend a complaint to include allegations that contradict prior sworn testimony given in that litigation if the prior statements would have led to summary disposition of the plaintiff's claim. Inconsistency and contradiction are treated very differently. Inconsistency leads to impeachment, while contradiction can lead to dismissal.

We do not believe that the allegations in plaintiff's amended verified complaint directly contradicted her prior sworn statements. We accept defendants' assertion that some of plaintiff's many statements are incon-

---

On motion by a party or on the court's own initiative, the court may strike from a pleading redundant, immaterial, impertinent, scandalous, or indecent matter, or may strike all or part of a pleading not drawn in conformity with these rules.

This rule does not provide a basis for striking allegations because of prior inconsistent testimony.

sistent with other statements she has made. These inconsistencies, while fodder for cross-examination, do not rise to the level of contradiction. In each of her numerous accounts plaintiff asserts that she was highly emotional, that she was under the direct supervision and control of Johnson, and that Johnson had nonconsensual sexual contact with her. Defendants emphasize that plaintiff alleged in her complaint that she cried and begged Johnson to let her out of Cell No. 7 and not return her there. In contrast, plaintiff stated in her deposition and in her internal affairs interview that she felt "freaked out," "grossed out," or squeamish because of the cockroaches in the cell. Although plaintiff's statements vary with respect to the degree of her distress and emotionality, she gave no sworn testimony that she was calm. Similarly, plaintiff's varying accounts of Johnson's statements do not detract from the essence of her allegations of quid pro quo harassment. In her complaint, plaintiff alleged that Johnson asked her if she would be a "good girl" and told her that she would be "indebted" to him for favorable treatment. Previously, plaintiff stated that she could not recall exactly what he said. She also previously testified that Johnson advised her to contact him instead of returning to her rehabilitation program, because he would "clean [her] up and take care of [her]." These differences are not substantial, because all of Johnson's alleged statements imply that he had power to act to plaintiff's advantage or disadvantage, thus giving her an incentive to please him. Finally, plaintiff's inconsistencies regarding whether the cell door was locked are not material, because she could not reasonably have believed that she was free to leave the cell without Johnson's permission even if the door was unlocked. None of plaintiff's prior statements, including her statement that she could not remember everything Johnson said, contradicted this basic account.

Defendants made a weak argument regarding plaintiff's dilatory motives and prejudice accruing to the defense. The inconsistencies between plaintiff's amended verified complaint and her prior statements do not reveal an attempt to resuscitate a futile claim for quid pro quo sexual harassment. The record offers little support for any finding that the basis for the amendment was delay. Nor is there record evidence of prejudice to defendants. To the extent that the amended complaint requires additional discovery, that request can be made to the trial court.

### V. CONCLUSION

We hold that the trial court erred by determining that defendants could not be held vicariously liable for Johnson's actions. Consequently, because plaintiff was not an inmate serving a sentence of imprisonment at Wayne County Jail, the sexual assault operated to deprive her of a public service. Furthermore, the trial court did not abuse its discretion by allowing plaintiff to amend her complaint. Therefore, defendants were improperly granted summary disposition.

Reversed and remanded for further proceedings. We do not retain jurisdiction.