## DINES v HENNING

Docket No. 106894. Submitted November 7, 1989, at Detroit. Decided March 14, 1990. Leave to appeal applied for.

Betty Dines and others brought a dramshop action in Monroe Circuit Court against Muriel L. Henning, doing business as Carl's Hideaway Bar, for damages arising out of the death of Daniel Dines. Plaintiffs claimed that defendant's employees served decedent alcoholic beverages while he was visibly intoxicated and that decedent's intoxication caused him to have the fatal automobile accident shortly after he drove away from defendant's establishment. Plaintiffs claimed that decedent's visible intoxication was shown by decedent's drinking and reckless driving prior to arriving at defendant's bar, by his loud behavior at the bar, by his reckless driving and accident shortly after leaving the bar, and by his 0.24 percent blood-alcohol level after the fatal crash. Following discovery, defendant moved for summary disposition on the basis that plaintiffs had failed to show factual support for the claim that defendant's employees had sold alcoholic beverages to decedent after observing him to be visibly intoxicated. The trial court, James J. Kelley, Jr., J., granted the motion and, thereafter, denied plaintiffs' motion for a rehearing. Plaintiffs appealed.

The Court of Appeals held:

1. The record does not support the claim that decedent was visibly intoxicated prior to arriving at defendant's establishment.

2. While decedent's loud behavior at the bar could support a finding that he was visibly intoxicated, plaintiffs failed to show that defendant's employees observed that behavior or, if they did, thereafter sold alcoholic beverages to the decedent.

3. The evidence concerning decedent's driving ability after leaving the bar and his blood-alcohol level after the accident is not sufficient to establish that decedent was visibly intoxicated at the bar or that he was thereafter sold alcoholic beverages.

4. The trial court properly found that discovery was complete

REFERENCES

Am Jur 2d, Intoxicating Liquors § 576.

See the Index to Annotations under Dramshop Acts.

and consideration of the motion for summary disposition was proper.

Affirmed.

MICHAEL J. KELLY, J., dissented. He would hold that there was a genuine issue of material fact as to whether decedent was sold alcoholic beverages after having been observed by defendant's employees to be visibly intoxicated. He would reverse.

1. INTOXICATING LIQUORS — VISIBLE INTOXICATION — EVIDENCE — DRAMSHOP ACT.

A person is visibly intoxicated within the meaning of the dramshop act when his intoxication would be apparent to the ordinary observer; visible intoxication may be proven by circumstantial evidence and inferences drawn therefrom.

2. INTOXICATING LIQUORS — VISIBLE INTOXICATION — EVIDENCE — DRAMSHOP ACT.

Boisterous behavior by a patron in a dramshop is evidence that the patron is visibly intoxicated; however, liability under the dramshop act requires not only proof of such behavior but also proof that an employee of the dramshop observed such behavior and thereafter furnished the patron with alcoholic beverages.

*Bockoff & Zamler* (by *Anne K. Flaherty*), and *Bendure & Thomas* (by *Mark R. Bendure* and *Amy R. Snell*), of Counsel, for plaintiffs.

*Charles N. Simkins,* for defendant.

Before: GILLIS, P.J., and MICHAEL J. KELLY and R. B. BURNS,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the circuit court's order granting defendant's motion for summary disposition, MCR 2.116(C)(10), and the circuit court's order denying their motion for rehearing. We affirm.

Daniel Dines was killed in an automobile accident after he had been drinking at Carl's Hidea-

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

way Bar, an establishment owned by defendant Muriel L. Henning. Plaintiffs sued, claiming that defendant's employees served decedent while he was visibly intoxicated. MCL 436.22(3); MSA 18.993(3). Defendant moved for summary disposition, claiming that there was no genuine issue of material fact as to whether decedent was served alcoholic beverages when he was visibly intoxicated because his companions on the evening in question testified in their depositions that decedent did not exhibit any visible signs of intoxication. Plaintiffs claimed that there was circumstantial evidence that decedent was visibly intoxicated at the bar, including: (1) decedent's drinking and reckless driving prior to arriving at the bar, (2) decedent's loudness at a pool table inside the bar, (3) decedent's reckless driving and accident shortly after leaving the bar, and (4) decedent's 0.24 percent blood-alcohol level after the fatal crash.

Decedent's companions on the evening of the accident were Boyd Baltrip, decedent's former-brother-in-law, and Kenneth Wylie. Baltrip testified that he and decedent went to Floyd Ankney's home at approximately 3:30 P.M. While there, Baltrip and decedent split either a six-pack or a twelve-pack of beer with four or five other people in the home. Baltrip had two beers, while decedent had three or four. At that time, they met up with Wylie and decided to go to another friend's house. After arriving at that friend's house, decedent, who had just purchased a used car, took the men for a ride. Decedent began to drive in an erratic manner and the fourth gentleman asked to be taken home. After decedent returned that man home, decedent, Baltrip, and Wylie went to the bar. Decedent was not intoxicated at that time and drove to the bar without incident. While at the bar, the men played pool and drank. Decedent

ordered a round of beers, and Baltrip later ordered another round of beers. Decedent subsequently drank two or three slammers, shots of whiskey followed by beers. Wylie ordered some nachos and decedent ate some. Thereafter, decedent and Wylie became a bit loud at the pool table and Baltrip suggested that they leave because the bar was a family place. The men then left the bar. Decedent drove straight at excessive speeds and ignored his passengers' requests to slow down. The accident occurred within one-half hour after they left the bar. Baltrip further testified that decedent was drunk weekly and that he had seen decedent drunk thirty times in the last five years. Baltrip also testified that he had observed decedent drive crazily a few times. Finally, Baltrip testified that other than decedent's loudness at the pool table, there was no visible sign that he was intoxicated.

On the other hand, Wylie testified that he was at Floyd Ankney's from 3:00 to 6:00 P.M. During that time, he drank a quart of beer and decedent and Baltrip left and returned three times. Decedent and Baltrip had their own quarts of beer. After leaving Ankney's home, the three men drove to another friend's house. That friend also got into the car and the men went to the store to buy a quart of beer to split between decedent, Baltrip, and Wylie. The other gentleman asked to be dropped off because of decedent's driving. Decedent drove that gentleman home normally. The remaining men then went to the bar, arriving there between 7:00 and 8:00 P.M. Wylie ordered a round of beers. Wylie drank four or five beers that night. Wylie paid for everything. Decedent drank only beer. Wylie ordered some nachos. Decedent did not eat any. Decedent did not exhibit any outward signs of intoxication. Decedent played pool and was not loud. Wylie did not think that decedent

was too drunk to drive. Shortly after leaving the bar, decedent began driving at a high rate of speed. Decedent laughed at Baltrip's and Wylie's requests to slow down. Decedent stopped laughing when he realized that the car was swerving and he was losing control. Wylie also testified that he and decedent were drinking buddies and that decedent was frequently drunk. Moreover, Wylie testified that decedent had a reputation for being a crazy driver.

We note that the accident occurred shortly before 9:00 P.M. on Saturday, December 8, 1984. We also note that decedent had had his license suspended, but was apparently able to drive at the time of the accident.

The circuit court granted defendant's motion for summary disposition. Plaintiffs then filed an untimely motion for reconsideration. Plaintiffs attached an affidavit from Baltrip which stated that decedent had bloodshot eyes at the bar. This was contrary to Baltrip's deposition testimony. Plaintiffs also attached an affidavit from an expert indicating that someone with decedent's blood-alcohol level, who is not a chronic drinker, will manifest visible signs of intoxication over ninety percent of the time. The circuit court denied plaintiffs' motion for reconsideration.

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests whether there is factual support for a claim. *Dumas v Auto Club Ins Ass'n*, 168 Mich App 619, 626; 425 NW2d 480 (1988). When ruling on such a motion, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence. *Id.* The party opposing summary disposition has the burden of showing that a genuine issue of disputed fact exists. *Id.* Giving the benefit of reasonable doubt to the nonmoving party, the court must

determine whether the kind of record which might be developed will leave open an issue upon which reasonable minds might differ. *Id.* This Court is liberal in finding a genuine issue of material fact. *Id.*

A person is visibly intoxicated under the dramshop act when his intoxication would be apparent to an ordinary observer. *Heyler v Dixon,* 160 Mich App 130, 145-146; 408 NW2d 121 (1987), lv den 428 Mich 922 (1987). Visible intoxication may be proven by circumstantial evidence and inferences drawn therefrom. *Id.* at 146.

Plaintiffs claim that decedent's driving and drinking before arriving at the bar support their claim that he was visibly intoxicated at the bar. We disagree. While decedent drove his car erratically when the fourth man was in it, he had no problem driving to Ankney's home, to the fourth man's home or to the bar. In fact, both Baltrip and Wylie testified that decedent did not appear drunk before he arrived at the bar.

Plaintiffs also claim that decedent's loudness while playing pool is evidence that he was visibly intoxicated. While this may be true, there is no evidence that defendant's employees observed this condition and furnished decedent with alcoholic beverages after that time as required to impose liability under the dramshop act. *Id.* at 145.

Plaintiffs further claim that the number of drinks decedent was served, decedent's accident shortly after leaving the bar and his blood-alcohol level constituted circumstantial evidence that he was visibly intoxicated there. We disagree. *McKnight v Carter,* 144 Mich App 623; 376 NW2d 170 (1985), lv den 424 Mich 859 (1985). As noted in plaintiffs' expert's affidavit, not all people exhibit visible signs of intoxication at a given blood-alcohol level, especially those who are chronic drink-

ers. Here, decedent's companions testified that he manifested no signs of visible intoxication in the bar, except for the loudness noted by Baltrip. As discussed in the preceding paragraph, this sign of intoxication was by itself insufficient to support plaintiffs' dramshop claim because there was no proof that defendant's employees observed this condition and furnished decedent with alcoholic beverages thereafter. Moreover, we do not believe that decedent's erratic driving after leaving the bar supports an inference that he was visibly intoxicated while at the bar, given decedent's companions' testimony and decedent's prior driving reputation and record. *Id.* at 630.

Plaintiffs further claim that the circuit court ignored Baltrip's and Wylie's testimony that they believed that decedent was drunk in the bar. We disagree. Baltrip's and Wylie's deposition testimony was clear that decedent exhibited no external signs of intoxication apparent to an ordinary observer other than decedent's loudness at the pool table before leaving.

Finally, plaintiffs claim that the circuit court improperly granted summary disposition because discovery was incomplete. We disagree. At the time the circuit court ruled on the motion discovery had been completed. MCR 2.301(A). *McKnight, supra,* p 632.

Affirmed.

MICHAEL J. KELLY, J. *(dissenting).* I disagree with the majority's conclusion that there is no genuine issue of fact regarding whether the decedent Dines was visibly intoxicated at the time he was served liquor by defendant's bar. Eyewitness testimony of visible intoxication is not required to establish a dramshop claim; visible intoxication may be proven by circumstantial evidence and the

inferences drawn therefrom. *Heyler v Dixon,* 160 Mich App 130, 145-146; 408 NW2d 121 (1987).

Review of the evidence presented to the circuit judge indicates an issue of fact regarding whether Dines was visibly intoxicated when defendant served him alcohol. Dines had been drinking since 3:30 that afternoon. He had been drinking either beer or beer with whiskey and had driven wildly prior to going to defendant's bar. In fact, one of decedent's passengers, Louie Pascaro, demanded to be let off because of decedent's driving, complaining that he did not want to get killed. The amount of drinking indicated by the witnesses Wylie and Baltrip, along with decedent's maniacal driving prior to going to the bar and after leaving the bar, certainly indicated that he was drunk, and probably visibly so. Baltrip testified at deposition that they left defendant's bar because he felt that decedent and Wylie were too loud and boisterous, which would also indicate visible intoxication. Decedent's blood alcohol content was 0.24 percent at the time of this accident. An affidavit of an expert witness was presented which stated that there was a probability in excess of ninety percent that an adult with that high a blood alcohol content would manifest visible signs of intoxication. Although a chronic drunkard may not have indicated visible signs of intoxication with that level of blood alcohol, I believe that the question of whether decedent was a chronic drunkard is an inference to be drawn by the jury rather than by the trial court or the Court of Appeals on review. The evidence presented, and the inferences drawn from it, create a material question of fact upon which reasonable minds could differ. The circuit court erred by granting summary disposition to defendant.

I would reverse and reinstate plaintiffs' claims.