CORRIGAN, J.
A vehicle driven by an intoxicated driver collided with an oncoming vehicle carrying two young men on US-127 near Jackson, killing all three individuals. The issues on appeal in this dramshop action involve (1) the presumption of nonliability under the dramshop act (DSA), MCL 436.1801(8); and (2) the adequacy of proofs regarding the driver’s alleged visible intoxication under MCL 436.1801(3).
MCL 436.1801(8) creates a rebuttable presumption of nonliability for all but the last retail licensee that serves alcohol to a visibly intoxicated person. This novel presumption operates to require that a plaintiff, when opposing a defendant that invokes this presumption, must show more than the prima facie case required under MCL 436.1801(3). A plaintiff rebuts this presumption by showing not only the evidence required for a prima facie case, but clear and convincing evidence. *534 Because the Court of Appeals incorrectly held that plaintiffs satisfactorily rebutted the presumption of nonliability, we reverse the judgment of the Court of Appeals on this issue.
We further hold that to establish “visible intoxication” under MCL 436.1801(3), a plaintiff must present evidence of actual visible intoxication. Because the Court of Appeals held that plaintiffs established their claim without such evidence, relying instead on suppositions drawn from blood alcohol tests, the visible intoxication of another person, and the like, we reverse its judgment and reinstate the trial court’s grant of summary disposition for defendant Beach Bar, Inc.
I. FACTS AND PROCEDURAL HISTORY
Plaintiffs, the personal representatives of the estates of Adam W Kuenner and Lance N. Reed,[1] filed separate dramshop claims against defendant Beach Bar, Inc., alleging that Curtis J. Breton[2] was served alcohol at defendant’s establishment. Plaintiffs contended that Breton was visibly intoxicated when he was served alcohol there, and his subsequent impaired driving resulted in the deaths of plaintiffs’ decedents.
Breton had spent the day drinking with his friend, John Marsh. Around 7:30 p.m., they consumed two beers at the Beach Bar. Lindsay Mizerik, the server at defendant’s establishment, had received training in identifying visibly intoxicated persons. She served Breton and did not observe him to exhibit slurred speech, *535 an aggressive manner, a lack of coordination, or erratic behavior. She did not consider refusing him service.
Breton and Marsh next went to the Eagles Nest[3] where they split a pitcher of beer. There, they encountered their supervisor, Summit Township Fire Department Chief Carl Hendges, who did not think either man was intoxicated. Another witness at the Eagles Nest, Richard Potts,[4] who knew Breton and who himself owned a convenience store that sold alcoholic beverages, observed that Breton’s eyes were not bloodshot or glassy and that he did not appear to be intoxicated. Similarly, Marsh did not notice any change in Breton’s speech, in his ability to walk, or redness in his eyes over the course of the day.
Shortly before 10 p.m., Breton drove Marsh home. At approximately 10:11 p.m., Breton crossed the center line of US-127 at a high rate of speed. His vehicle collided head-on with a vehicle carrying plaintiffs’ two decedents, taking the lives of all three men. An examination after the collision revealed that Breton’s blood alcohol content was 0.215 grams per 100 milliliters of blood.
Defendant, as the second-to-the-last establishment to serve Breton, sought summary disposition under MCR 2.116(0(10). Defendant relied on the rebuttable presumption of nonliability available to all but the last serving establishment under § 801(8). Defendant argued that plaintiffs failed to rebut the presumption available under § 801(8) because they failed to show that Breton was visibly intoxicated. Plaintiffs re *536 sponded that a factual issue remained regarding whether defendant’s establishment was the last to serve alcohol to Breton and that, regardless, Breton was served alcohol when he was visibly intoxicated. Plaintiffs also offered the expert opinion reports of two toxicologists.
Both of those reports estimated the number of drinks that Breton had consumed and recited his age, weight, and the alcohol levels in his blood and urine after the collision. Given this amount of alcohol and Breton’s physical makeup, the toxicologists opined that he must have been significantly impaired.* **[5] They listed several manifestations of impairment, such as disorientation and lack of coordination, and concluded that he must have exhibited some of these symptoms.
The trial court held that plaintiffs had shown Breton’s visible intoxication by the experts’ deductions from the data regarding how Breton must have appeared. The trial court concluded, however, that plaintiffs were required to offer more than circumstantial evidence from experts and so failed to rebut the presumption of nonliability with “positive, unequivocal, strong and credible” evidence in light of Krisher v Duff, 331 Mich 699; 50 NW2d 332 (1951). Thus, the court granted summary disposition to defendant.
The Court of Appeals granted each plaintiff’s application for leave to appeal, consolidated the appeals, reversed the judgment of the trial court, and remanded the cases to the trial court.[6] It concluded that the trial court had impermissibly heightened plaintiffs’ burden *537 of proof to overcome the presumption protecting the second-to-the-last bar. Plaintiffs’ experts’ testimony, predicated on Breton’s physical build and the alcohol in his body at the time of the accident, and testimony about the level of intoxication of Marsh sufficed to create a genuine issue of material fact regarding whether Breton was visibly intoxicated when served at defendant’s establishment. The Court of Appeals held that this evidence permitted plaintiffs to withstand summary disposition. We granted leave to appeal. 474 Mich 886 (2005).
II. STANDARD OF REVIEW
We review a grant or denial of summary disposition de novo. Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999). When ruling on a motion brought under MCR 2.116(0(10), the trial court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Id. at 120. “Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.” Id. Further, we review a question of statutory interpretation de novo. Nastal v Henderson & Assoc Investigations, Inc, 471 Mich 712, 720; 691 NW2d 1 (2005).
III. ANALYSIS
By creating a remedy against retail liquor licensees for persons injured by intoxicated tortfeasors, the DSA abrogated the general common-law rule that no cause of action existed for the negligent selling or furnishing of alcohol to an able-bodied person. Millross v Plum Hollow Golf Club, 429 Mich 178, 183-184; 413 NW2d 17 (1987). The act provides a remedy for plaintiffs injured *538 by a visibly intoxicated person, allowing suit to be brought against a retail establishment that unlawfully sells alcohol to a minor or a visibly intoxicated person, if the unlawful sale is a proximate cause of the injury. MCL 436.1801(3) provides:
Except as otherwise provided in this section, an individual who suffers damage or who is personally injured by a minor or visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the minor or visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, shall have a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death. In an action pursuant to this section, the plaintiff shall have the right to recover actual damages in a sum of not less than $50.00 in each case in which the court or jury determines that intoxication was a proximate cause of the damage, injury, or death.
Although a plaintiff must establish the elements of § 801(3) with regard to each defendant in a dramshop claim, the Legislature also created a rebuttable presumption. This presumption affords an additional measure of protection for a retail licensee that was not the last licensee to serve alcohol to a visibly intoxicated person. MCL 436.1801(8) provides:
There shall be a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or the visibly intoxicated person, has not committed any act giving rise to a cause of action under subsection (3).
Thus, all establishments but the last to serve the person have the benefit of a rebuttable presumption that no unlawful service occurred. How to give meaning *539 to this presumption is the central issue of this case. As indicated, the trial court concluded that the presumption imposed a heightened burden on plaintiffs, requiring them to establish Breton’s visible intoxication at defendant’s bar by “positive, unequivocal, strong and credible evidence.” The Court of Appeals found, however, that the trial court erred because the statute did not expressly provide for such a heightened burden. 264 Mich App at 374-375. Further, it held that the general rule regarding rebuttable presumptions found in MRE 301[7]
[8]controlled. The Court thus imposed the usual standard required to overcome a rebuttable presumption: competent and credible evidence. The Court of Appeals erred by failing to recognize that this general rule cannot apply to the separate and novel presumption of § 801(8). Plaintiffs already bear the burden of establishing a prima facie case against any defendant in a dramshop claim, including showing the element of serving alcohol to a visibly intoxicated person. Under MRE 301, demonstrating a prima facie case itself remains subject to the standard of competent and credible evidence. Accordingly, to merge the test for establishing the prima facie case with the test to rebut the presumption prevents defendant from receiving the protection that the Legislature granted in § 801(8).[8] Requiring the *540 same evidence to make out a dramshop claim and to rebut an additional presumption is tantamount to no test at all.
Because we are precluded from construing § 801(8) as having no meaning,[9] some difference must exist between the proofs required under § 801(8) and those required under § 801(3). Thus, in a lawsuit against a retail licensee that has the benefit of the presumption, plaintiffs must not only make out a prima face case under § 801(3) (among other things, that the drinker was visibly intoxicated), but must also rebut with additional evidence the presumption available to second-to-the-last (and earlier) establishments under § 801(8). Because the Legislature is held to be aware of this state’s law, we assume, with regard to the presumption, that the Legislature considered the hierarchy of evidentiary standards available in our law. In that hierarchy, the most rigorous standard of proof is “proof beyond a reasonable doubt”; the least rigorous is “proof by a preponderance of the evidence”; and between these is “proof by clear and convincing evidence.” In re Martin, 450 Mich 204, 225-227; 538 NW2d 399 (1995). *541 The standard of “proof beyond a reasonable doubt” is not applied in civil cases but is applied in criminal matters. Id. The “proof by a preponderance of the evidence” standard is the standard normally associated with civil matters and indeed is the standard utilized to assess the evidence under § 801(3). This leaves “proof by clear and convincing evidence” as the enhanced standard to rebut the statutory presumption under § 801(8). Thus, in these cases a plaintiff, in addition to making out a prima facie case proven by a preponderance of the evidence under § 801(3), must also, when a defendant is not the last establishment to serve the allegedly intoxicated person, present clear and convincing evidence to rebut and thus overcome the presumption of § 801(8). That standard, while not precisely articulated by the trial court, was essentially the standard it adopted.[10] Accordingly, we affirm the trial court’s ruling and reverse the judgment of the Court of Appeals in this regard.
As demonstrated by the dissent’s interpretation, a lower threshold for rebutting the presumption would require a plaintiff only to show (1) that a retail licensee served alcohol to a patron (2) while the patron was visibly intoxicated. But a plaintiff must already demonstrate these same elements to make out a claim under § 801(3). Further, the Legislature expressly differentiated between the last retail licensee to sell, give, or furnish alcohol to a visibly intoxicated person and the prior retail licensees to do the same. The Legislature excepted the former class of licensees from the protection of the § 801(8) presumption but included the latter class of licensees in that protection. Failing to aeknow *542 ledge the distinction between these licensees disregards the plain language of the statute. Accordingly, we give full effect to the language of the statute by recognizing the different burden necessitated when the Legislature granted a presumption to some retail licensees.
We next determine if plaintiffs’ evidence sufficed to overcome the presumption. It did not, because the proofs presented could not even meet the competent and credible standard for rebutting the presumption to show service to a visibly intoxicated person.
This standard of “visible intoxication” focuses on the objective manifestations of intoxication. Miller v Ochampaugh, 191 Mich App 48, 59-60; 477 NW2d 105 (1991).[11] While circumstantial evidence may suffice to establish this element, it must be actual evidence of the visible intoxication of the allegedly intoxicated person.[12] Other circumstantial evidence, such as blood alcohol levels, time spent drinking, or the condition of other drinkers, cannot, as a predicate for expert testimony, alone demonstrate that a person was visibly intoxicated because it does not show what behavior, if any, the *543 person actually manifested to a reasonable observer. These other indicia — amount consumed, blood alcohol content, and so forth — can, if otherwise admissible, reinforce the finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance. While circumstantial evidence retains its value, such (and any other type of) evidence must demonstrate the elements required by § 801(3), including “visible intoxication.”[13]
Plaintiffs here presented no evidence of Breton’s visible intoxication at the time he was served at defendant’s establishment in response to defendant’s motion for summary disposition. The record reflects that all four eyewitnesses saw no signs that Breton was visibly intoxicated. Plaintiffs further relied on two expert toxicologists’ expectations that Breton would have exhibited signs of intoxication. But reports discussing Breton’s physical statistics and alcohol consumption, coupled with predictions of his impairment, offer only speculation about how alcohol consumption affected Breton that night. Expert post hoc analysis may demonstrate that Breton was actually intoxicated but does not establish that others witnessed his visible intoxication.[14] Consequently, no basis for a DSA claim against defendant existed. Because plaintiffs failed to establish a genuine issue of material fact that Breton was visibly intoxicated even under § 801(3), the trial court correctly granted summary disposition for defendant.
*544 IV CONCLUSION
We conclude that the Court of Appeals erred by reversing the trial court’s grant of summary disposition to defendant. Plaintiffs failed to rebut the presumption of nonliability available to defendant under MCL 436.1801(8). We further hold that expert testimony regarding Breton’s projected visible intoxication lacked any basis in actually manifested signs of intoxication and, thus, did not create a genuine issue of material fact under MCL 436.1801(3). Accordingly, we reverse the judgment of the Court of Appeals and reinstate the trial court’s grant of summary disposition for defendant.
Taylor, C.J., and Weaver, Young, and Markman, JJ., concurred with CORRIGAN, J.

 The personal representatives of the estates, James D. Kuenner and Lawrence Reed, are the plaintiffs in these actions.

 Although not a party to this appeal, Frederick Breton, the personal representative of the estate of the intoxicated driver, Curtis Breton, deceased, was also named as a defendant.

 Plaintiffs also included HB Resort Enterprises, Inc., which owns the Eagles Nest, as a defendant. HB Resort Enterprises, Inc., is not a party to this appeal.

 Robert Potts’s wife, who accompanied him that evening, also did not observe any loud or unusual behavior at Breton’s table.

 Notably, one expert’s opinion focused on Breton’s hypothesized behavior as of and after his departure from defendant’s establishment, rather than on assessing his behavior at the time that he was served alcohol there.

 264 Mich App 363; 691 NW2d 779 (2004).

 MRE 301 provides:
In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

 In Wold Architects & Engineers v Strat, 474 Mich 223, 234; 713 NW2d 750 (2006), we stated that nothing in the act at issue there showed an intent to abrogate the common law. We did not extend that analysis to *540 conclude that the absence of language specifically abrogating the common law demonstrated that no abrogation occurred. Further, the dissent incorrectly asserts that the Legislature “strongly indicate[d]” an intent to incorporate a lower common-law standard to rebut the presumption. Post at 551. The dissent’s position is inconsistent with the Legislature’s purposeful differentiation between the last bar to serve a visibly intoxicated patron and a bar that served the patron earlier. Indeed, applying the dissent’s standard, which would allow for rebutting the presumption by the same prima facie evidence that satisfies § 801(3), the presumption would have no force or effect. We cannot conclude that the legislative enactment of a rebuttable presumption favoring those bars that were not the last bar to serve a visibly intoxicated person “strongly indicates” a legislative intent to encompass a standard of proof that would render that presumption meaningless.

 See Sweatt v Dep’t of Corrections, 468 Mich 172, 183; 661 NW2d 201 (2003).

 See 2 McCormick, Evidence (5th ed, Practitioner Treatise Series), § 340, pp 425, 427 n 24, citing Krisher, supra, as applying the “clear and convincing evidence” standard.

 See also SJI2d 75.02 (“A person is ‘visibly intoxicated’ when his or her intoxication would be apparent to an ordinary observer.”). Indeed, even the dissent describes the importance of the statutory phrase “visibly intoxicated.” See post at 552-556.

 See, e.g., Dines v Henning, 437 Mich 920 (1991), reversing the Court of Appeals judgment in that matter, 184 Mich App 534; 459 NW2d 305 (1990), and adopting the dissenting opinion of Judge Michael J. Kelly, 184 Mich App at 540-541. Although Judge Kelly stated that “[ejyewitness testimony of visible intoxication [was] not required to establish a dramshop claim,” he further stated that “visible intoxication may be proven by circumstantial evidence and the inferences drawn therefrom.” Id. Thus, permissible inferences must have some basis in objectively observable behavior. Moreover, Judge Kelly’s opinion relied not only on evidence of the amount of alcohol consumed and expert testimony, but on evidence (1) that the visibly intoxicated person drove wildly and maniacally both to and from the bar and (2) that that person behaved in a “loud and boisterous” manner. Id. at 541.

 In 1972, the Legislature amended the statute (then MCL 436.22) to modify “intoxicated person” by adding the term “visibly.” 1972 PA 196; compare 1961 PA 224.

 Indeed, even employing, for the sake of argument, the dissent’s proffered definition of “capable of being seen” for “visibly intoxicated,” the expert testimony still falls short of that standard. Plaintiffs’ experts’ reports demonstrated only their own expectation of Breton’s visible intoxication, not that he actually was visibly intoxicated.