*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DIANA E. POZDERCA, by ION
POZDERCA, Personal Representative,

        Plaintiff-Appellee/Cross-Appellant,

v

MAPLE LANE GOLF CLUB,

        Defendant/Cross-Plaintiff-
        Appellant/Cross-Appellee,

and

BEARCAT ENTERPRISES, INC., doing business as
BUFFALO WILD WINGS,

        Defendant,

and

TAD DENNIS,

        Defendant/Cross-Defendant.

UNPUBLISHED
June 10, 2021

No. 349460
Macomb Circuit Court
LC No. 2016-000206-NS

ESTATE OF DIANA E. POZDERCA, by ION
POZDERCA, Personal Representative,

        Plaintiff-Appellee/Cross-Appellant,

v

MAPLE LANE GOLF CLUB,

        Defendant/Cross-Plaintiff,

No. 349486
Macomb Circuit Court
LC No. 2016-000206-NS

-1-

and

BEARCAT ENTERPRISES, INC., doing business as
BUFFALO WILD WINGS,

        Defendant-Appellant/Cross-Appellee,

and

TAD DENNIS,

        Defendant/Cross-Defendant.

Before:  FORT HOOD, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

In this wrongful-death dramshop action, and in Docket Nos. 349460 and 349486, respectively, defendants-appellants Maple Lane Golf Club (MLGC) and Bearcat Enterprises (Bearcat), doing business as Buffalo Wild Wings (BWW), appeal by leave granted the order of a successor judge that set aside a predecessor judge's orders granting defendants summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).  In both cases, plaintiff cross-appeals, challenging the predecessor judge's original summary disposition orders in favor of defendants-appellants.  We reverse in both appeals.

## I.  FACTS AND PROCEEDINGS

Plaintiff's decedent, Diane Pozderca, died in an automobile collision on September 11, 2015, at 8:40 p.m., when a vehicle driven by defendant Tad Dennis crossed the center line and struck the decedent's vehicle head on.  Plaintiff alleged that Dennis had been consuming alcoholic beverages from 9:33 a.m. until 8:27 p.m. on the day of the accident.  Dennis's blood-alcohol content was measured at 0.21 milligrams of alcohol per 100 milliliters of blood at 9:40 p.m. Dennis was a firefighter for the city of Warren and an organizer of a charitable golf outing held at MLGC on September 11, 2015.  At the fundraiser, Dennis played golf as part of a foursome with Timothy Seog, Michael Szyberski, and William Tocco.  Dennis and Seog bought two "six-pack specials" to share while they played golf.  This was a bag containing a six-pack of beer and ice, sold for the price of five beers.  Dennis consumed alcohol before, during, and after the dinner that concluded the charitable event at MLGC.  After the dinner, Dennis and Seog drove separately to a BWW restaurant in Clinton Township.  David Clancy joined them at the restaurant.  Dennis consumed two glasses of beer and spilled a third glass at BWW.  Just before 8:30 p.m., Dennis, Seog, and Clancy left BWW.  Dennis began to drive home.  At 8:40 p.m., Dennis struck the decedent's vehicle on Plumbrook Road.

Plaintiff filed suit against MLGC, Bearcat, and Dennis.  Plaintiff alleged that MLGC and Bearcat served alcohol to Dennis when he was visibly intoxicated.  MLGC and Bearcat moved for summary disposition under MCR 2.116(C)(10).  Because MLGC was not the last retail licensee to

serve Dennis, it was entitled to a statutory rebuttable presumption that it was not the cause of the decedent's injury. MLGC argued that plaintiff could not establish a genuine issue of material fact whether Dennis exhibited signs that would cause an ordinary observer to realize that he was intoxicated. MLGC supported its motion with the deposition testimony of Dennis's companions and MLGC's employees stating that Dennis did not show such signs. Bearcat also moved for summary disposition, arguing that Dennis showed no signs of intoxication. Bearcat relied on the deposition testimony of Seog, Clancy, and BWW employees. Notably, Dennis was charged with second-degree murder, MCL 750.317, and none of the parties were able to take Dennis's deposition because he asserted his Fifth Amendment right against self-incrimination.

Plaintiff supported his arguments opposing summary disposition with video evidence from the dramshop defendants' security systems. Plaintiff argued that the videos showed that Dennis acted erratically inside the MLGC clubhouse, in the MLGC parking lot, and inside BWW. Plaintiff also submitted the affidavits of two expert witnesses, Gerald Shiener, M.D., and Karl Ebner, Ph.D., who opined that Dennis's blood-alcohol level supported an inference that he was acting in a manner that evinced intoxication. Plaintiff argued that Dennis's companions were not reliable witnesses because they were biased in Dennis's favor.

The case was assigned to Macomb Circuit Court Judge Edward Servitto, who granted the dramshop defendants' motions for summary disposition. Judge Servitto also denied plaintiff's motion for reconsideration ("Motion I") of the summary disposition order for MLGC ("Order I"). Thereafter, the case was administratively reassigned to Judge Carl Marlinga. Plaintiff filed a motion before Judge Marlinga for "correction" of the summary disposition orders issued by Judge Servitto, requesting relief under MCR 2.119(F), MCR 2.604(A), and MCR 2.612 ("Motion II"). Judge Marlinga indicated that he disagreed with Judge Servitto's summary disposition orders, but he denied plaintiff's motion with respect to each defendant because he did not believe he had the authority to disturb them ("Order II-A" [MLGC] and "Order II-B" [Bearcat]).

In 2018, Dennis pleaded nolo contendere to second-degree murder and operating a vehicle while intoxicated, causing death, MCL 257.625(4). Plaintiff was then able to take his deposition. Thereafter, plaintiff again moved for relief from the summary disposition orders and the order denying the earlier motion for relief from judgment or correction of the summary disposition orders. Judge Marlinga granted the motion, stating that he believed that Judge Servitto erred by granting summary disposition in favor of MLGC and Bearcat, and that he had the authority as a successor judge to correct a nonfinal order ("Order III"). Accordingly, MLGC and Bearcat were reinstated as dramshop defendants. This Court subsequently granted their applications for leave to appeal Judge Marlinga's order. Plaintiff filed cross-appeals, challenging Judge Servitto's original summary disposition orders.

## II. PROCEDURAL ISSUES

In Docket No. 349460, MLGC argues that plaintiff was not permitted to move for relief under MCR 2.604(A) after having previously moved for reconsideration under MCR 2.119(F) and

for relief from judgment under MCR 2.612. MLGC also argues that Judge Marlinga, as a successor judge, lacked the authority to set aside Judge Servitto's order under MCR 2.613(B).[1] We disagree.

We review de novo issues concerning the interpretation of statutes and court rules. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "We employ statutory construction principles when interpreting court rules, applying the rule's plain and unambiguous language as written." *Spine Specialists of Mich, PC v State Farm Mut Auto Ins Co*, 317 Mich App 497, 501; 894 NW2d 749 (2016). "In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001).

A. PROPRIETY OF GRANTING PLAINTIFF RELIEF UNDER MCR 2.604(A)

In Motion I, plaintiff moved for reconsideration of Judge Servitto's orders granting summary disposition for the dramshop defendants. Motions for reconsideration are governed by MCR 2.119(F), which provides:

> **(F) Motions for Rehearing or Reconsideration.**
>
> (1) Unless another rule provides a different procedure for reconsideration of a decision (see, e.g., MCR 2.604[A], 2.612), a motion for rehearing or reconsideration of the decision on a motion must be served and filed not later than 21 days after entry of an order deciding the motion.
>
> (2) No response to the motion may be filed, and there is no oral argument, unless the court otherwise directs.
>
> (3) Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

In Order I, Judge Servitto found no "palpable" error warranting reconsideration under MCR 2.119(F). In Motion II, plaintiff moved for relief under MCR 2.119(F), MCR 2.604(A), and MCR 2.612. MCR 2.604(A) provides:

> Except as provided in subrule (B),[2] an order or other form of decision adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties, and the

---

[1] We note that, in Docket No. 349486, Bearcat echoes the same procedural arguments raised by MLGC. Accordingly, our analysis of the procedural issues in Docket No. 349460 applies equally to Bearcat's appeal.

[2] MCR 2.604(B) applies to receiverships and is not relevant to this case.

-4-

order is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties. Such an order or other form of decision is not appealable as of right before entry of final judgment. A party may file an application for leave to appeal from such an order.

Additionally, MCR 2.612 provides, in pertinent part:

**(A) Clerical Mistakes.**

(1) Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it.

\* \* \*

**(C) Grounds for Relief From Judgment.**

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B).

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

(d) The judgment is void.

(e) The judgment has been satisfied, released, or discharged; a prior judgment on which it is based has been reversed or otherwise vacated; or it is no longer equitable that the judgment should have prospective application.

(f) Any other reason justifying relief from the operation of the judgment.

(2) The motion must be made within a reasonable time, and, for the grounds stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken. Except as provided in MCR 2.614(A)(1), a motion under this subrule does not affect the finality of a judgment or suspend its operation.

(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court.

(4) The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action. Relief may not be sought or obtained by the writs of coram nobis, coram vobis, audita querela, bills of review, or bills in the nature of a bill of review.

In Orders II-A and II-B, Judge Marlinga expressed his disagreement with Judge Servitto's summary disposition orders, but found no grounds to disturb them under MCR 2.612(C). In Order III, however, Judge Marlinga concluded that he had authority under MCR 2.604(A) and 2.612(C)(1)(f) to grant relief.

MLGC's first argument is that plaintiff's Motion III sought relief on the ground that the trial court had erroneously concluded that there was no palpable error. This created a discrepancy because in Order II-A Judge Marlinga denied plaintiff relief against MLGC because there were no grounds for relief under MCR 2.612(C)(1). We do not agree that in deciding Motion III, Judge Marlinga was constrained by the specific reasons he denied Motion II. Judge Marlinga's comments at the hearing on Motion III clearly indicated that he was reversing his prior decision under MCR 2.604(A) because he believed that the prior decision was substantively incorrect and that the summary disposition orders were also substantively incorrect.

MLGC argues that plaintiff was not permitted to file successive motions for reconsideration after Judge Servitto denied Motion I. We acknowledge that MCR 2.119(F) does not provide for multiple motions for reconsideration. Generally, reconsideration is not warranted where the court is merely asked to revisit issues it ruled upon previously. MCR 2.119(F)(3); *Traverse City Light & Power Bd v Home Ins Co*, 209 Mich App 112, 126-127; 530 NW2d 150 (1995). However, MCR 2.119(F) recognizes that MCR 2.604(A) exists as a separate procedure in which a trial court may alter or set aside a previous nonfinal order.

Plaintiff relies on *Hill v City of Warren*, 276 Mich App 299; 740 NW2d 706 (2007), in which this Court addressed a trial court's order granting the plaintiffs' "renewed" motion for class action certification after the court denied the original certification motion. The trial court stated that its initial denial had been a close decision, and the court "had become persuaded that class certification was the superior way for the action to proceed." *Id*. at 304. The defendant argued on appeal that the renewed motion "was really a motion for reconsideration that was impermissible because it was not made within the 14-day period permitted under MCR 2.119(F)." *Id*. at 306-307. This Court held:

> Although the trial court treated the motion as one for reconsideration, plaintiffs did not present it as such. As a general matter, courts are permitted to revisit issues they previously decided, even if presented with a motion for reconsideration that offers nothing new to the court. MCR 2.119(F)(3); *Smith v Sinai Hosp of Detroit*, 152 Mich App 716, 722-723; 394 NW2d 82 (1986). In any event, MCR 2.119(F)(1) explicitly refers to MCR 2.604(A) as "another rule" that "provides a different procedure for reconsideration of a decision . . . ." Under MCR 2.604(A), an order that does not dispose of all issues in a case does not terminate the action or entitle a party to appeal as of right and "is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." The court rules therefore give the trial court explicit procedural authority to revisit an order

while the proceedings are still pending and, on that reconsideration, to determine that the original order was mistaken, as the trial court did here. [*Hill*, 276 Mich App at 307.]

In *Hill*, this Court clearly indicated that a trial court is not precluded from revising or reversing a nonfinal prior order outside the requirements of MCR 2.119(F). Although plaintiff's Motions II and III raised substantially the same arguments as Motion I, the trial court was permitted to revisit any prior, nonfinal order and grant Motion III. The trial court was not required to continue the proceedings bound by a prior summary disposition order that it believed was improperly issued. Although MCR 2.604(A) does not specifically provide that a party may raise the same issue in multiple postorder motions, it does not preclude repeated arguments.

MLGC further argues that the trial court exceeded the scope of MCR 2.604(A) by vacating the summary disposition order and Orders I and II-A. It argues that MCR 2.604(A) permits only "revision," not full reversal of a prior decision. In *Bank of America, NA v Fidelity Nat Title Ins Co*, 316 Mich App 480, 521; 892 NW2d 467 (2016), this Court approved a trial court's grant of summary disposition based on an argument that it had previously rejected. The Court "agree[d] . . . that the trial court had authority to revisit its earlier determination concerning the applicability of the full credit rule" pursuant to the authority of MCR 2.604(A). Additionally, this Court's affirmance of the trial court's reversal of the prior order denying class certification in *Hill*, 276 Mich App 299, tacitly construed the term "revise" to allow reversal or vacation of a prior order.

MLGC also argues that plaintiff was required to demonstrate grounds for relief under MCR 2.612. It argues that MCR 2.604(A) cannot be construed as granting unlimited authority for a trial court to revise or set aside its prior orders; therefore, it must implicitly incorporate the enumerated grounds for relief in MCR 2.612. "A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme." *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). MCR 2.604 provides that "an order or other form of decision adjudicating *fewer than all the claims, or the rights and liabilities of fewer than all the parties*, does not terminate the action . . . and the order is subject to revision *before entry of final judgment adjudicating all the claims* . . . ." (Emphasis added.) In contrast, MCR 2.612(C)(1) allows the trial court to "relieve a party . . . from a *final judgment, order, or proceeding* . . . ." (Emphasis added.) These court rules thus apply to distinct circumstances.

The lack of specific enumerated grounds in MCR 2.604(A) and the provision of specific enumerated grounds in MCR 2.612 are consistent with a scheme of allowing the trial court to correct its own mistakes before a final judgment is entered while upholding the value of finality. This distinction reasonably allows the trial court to avoid continuing proceedings in which an erroneous ruling could result in additional errors before a final order is entered. To the extent that the trial court was persuaded that the dramshop defendants were erroneously dismissed, allowing plaintiff's claim against Dennis to proceed to trial could waste judicial resources if this Court later reversed summary disposition for Bearcat and MLGC.

In *Mikedis v Perfection Heat Treating Co*, 180 Mich App 189; 446 NW2d 648 (1989), the trial court dismissed the plaintiffs' complaint "based on an incorrect belief that plaintiffs had settled their intentional tort claim and an erroneous view of an earlier decision of this Court." This

Court concluded that these errors "constitute extraordinary circumstances which entitled plaintiffs to relief from judgment under MCR 2.612(C)(1)(f)." *Id.* at 203-204. In a footnote, this Court stated:

> While it is not crucial to the proper resolution of the instant appeal, we note that Judge Roumell's order seems, on its face, to have disposed with finality only of Counts I and III, conditionally granting summary disposition on Count II, with contingencies providing for remand to district court to try that issue. An order which does not dispose of all the claims of all the parties is not a final judgment, and the trial court was thus free to modify that decision at any time before entry of final judgment. MCR 2.604(B) [now 2.604(A)]. Neither final judgment nor an order of remand appears to have ever been entered here, so Judge Murphy, as successor to Judge Roumell, was empowered to reverse that interlocutory order without regard to the time elapsed, simply on the basis of a preference for a more correct adjudication of the rights and liabilities of the litigants. [*Mikedis*, 180 Mich App at 204 n 4.]

These statements support the conclusion that MCR 2.604(A) affords a trial court broad discretion to correct a prior order that it believes to be erroneous.

MLGC argues that Dennis's testimony did not provide a basis for setting aside the trial court's prior summary disposition orders. We agree that Dennis's testimony that he did not remember anything about his activities after the golf tournament and did not add any relevant evidence to the issue of the dramshop defendants' liability. However, Judge Marlinga never indicated that Dennis's testimony was a factor in his decision. Therefore, this argument is not a basis for disturbing Judge Marlinga's order setting aside Judge Servitto's summary disposition order in favor of MLGC.

With the above in mind, we conclude that Judge Marlinga was permitted to revisit the orders granting summary disposition under MCR 2.604(A).

### B. SUCCESSOR JUDGE'S AUTHORITY UNDER MCR 2.613(B)

As noted above, MLGC also argues that Judge Marlinga, as a successor judge, lacked the authority to set aside Judge Servitto's order under MCR 2.613(B).

MCR 2.613(B) provides:

> **Correction of Error by Other Judges.** A judgment or order may be set aside or vacated, and a proceeding under a judgment or order may be stayed, only by the judge who entered the judgment or order, unless that judge is absent or unable to act. If the judge who entered the judgment or order is absent or unable to act, an order vacating or setting aside the judgment or order or staying proceedings under the judgment or order may be entered by a judge otherwise empowered to rule in this matter.

MLGC relies on *Totzkay v DuBois*, 140 Mich App 374; 364 NW2d 705 (1985), in which this Court held that former GCR 1963, 529.2, did not allow a successor judge to rule on preliminary

matters already decided by a predecessor judge because reassignment of a case for trial purposes does not render the pretrial judge absent or unable to act. See also *Berar Enterprises, Inc v Harmon*, 101 Mich App 216, 228; 300 NW2d 519 (1980) (holding that "GCR 1963, 529.2 mandates that a party directly attack a judgment or final order before the judge who made the judgment or order"). MLGC argues that this interpretation of GCR 1963, 529.2, is a longstanding principle in Michigan law that applies with equal force to MCR 2.613(B).

However, in *People v Watkins*, 178 Mich App 439, 448-449; 444 NW2d 201 (1989), rev'd on other grounds 438 Mich 627 (1991), this Court held that after the case was transferred from the originally assigned judge to a successor judge, the successor judge had authority under MCR 2.613(B) to reverse the predecessor judge's order severing the trial of two defendants from the trial of the other three. This Court observed that the chief judge had the authority to reassign the defendants' cases, and noted that there was "no indication of 'judge shopping' in the record." *Watkins*, 178 Mich App at 449.

In *Dutton Partners, LLC v CMS Energy Corp*, 290 Mich App 635, 639-640; 802 NW2d 717 (2010). a predecessor judge denied the defendant's motion for summary disposition. The defendant filed a renewed summary disposition motion, which a successor judge also denied. *Id*. at 642. This Court reversed and held that the successor judge erred by denying the defendant's renewed motion for summary disposition. *Id*. at 645-646. This Court did not explicitly address the successor judge's authority to reverse the predecessor judge's decision, but noted in a footnote that MCR 2.613(B) granted the successor judge "the authority to enter whatever orders his or her predecessor could have entered." *Id*. at 641 n 2. In *Mikedis*, 180 Mich App 189, the predecessor judge retired and was succeeded by Judge Murphy, who concluded that a summary disposition order entered by the predecessor judge should be set aside in view of recent caselaw concerning the intentional-tort exception to the exclusive-remedy provision of the workers compensation act. *Id*. at 195-196.

We are further persuaded that, after the reassignment of the case from Judge Servitto to Judge Marlinga, Judge Servitto, as the predecessor judge, was absent or unable to act under MCR 2.613(B), despite that he remained a sitting judge on the same court. See *People v Kinnon*, unpublished per curiam opinion of the Court of Appeals, issued April, 22, 2021 (Docket No. 354121), pp 2-3 (indicating that after the chief judge exercised his authority to reassign the court's workload among judges under MCR 8.111, the original judge was "unable to act" and the successor judge was authorized to act in his place). An administrative reassignment of a case would undermine efficient docket management if judicial authority over the case was divided between the predecessor and successor judges. In the absence of any indicia of judge-shopping, which there is none here, there is no practical reason for dividing judicial authority. Therefore, Judge Marlinga, as the successor judge, was authorized by MCR 2.613(B) to revisit any prior orders entered by Judge Servitto.

## III. SUBSTANTIVE ISSUES

Both MLGC and Bearcat argue that Judge Servitto properly granted their motions for summary disposition, and Judge Marlinga erred by concluding otherwise.[3] We agree.

The trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Motions brought under MCR 2.116(C)(10) should be granted "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of a reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.* This Court must consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).

The dramshop liability act provides that a "retail licensee shall not directly or indirectly, individually or by a clerk, agent, or servant sell, furnish, or give alcoholic liquor to an individual who is visibly intoxicated." MCL 436.1801(1). "[A]n individual who suffers damage or who is personally injured by a . . . visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the . . . visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, has a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death." MCL 436.1801(2). "A person is visibly intoxicated when the person's intoxication would be apparent to an ordinary observer." *Miller v Ochampaugh*, 191 Mich App 48, 57; 477 NW2d 105 (1991).

"There is a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or the visibly intoxicated person, has not committed any act giving rise to a cause of action under subsection (2)." MCL 436.1801(7). "This

---

[3] We note plaintiff's argument that MLGC failed to raise any substantive challenge to Judge Marlinga's reversal of the summary disposition orders in its brief on appeal, and therefore this Court should not address the substantive merits of the case as they relate to MLGC. Indeed, MLGC failed to raise this issue in its questions presented to this Court. See *River Investment Group, LLC v Casab*, 289 Mich App 353, 360; 797 NW2d 1 (2010) (a party may waive issues on appeal by failing to present them in the statement of questions presented). However, we note that MLGC did weigh the evidence available to Judge Marlinga in deciding Motion III in its brief, including the newly acquired deposition of Dennis, in arguing that no clear and convincing evidence existed of visible intoxication to warrant overturning Judge Servitto's grant of summary disposition. Because we can discern the nature of the issue, and for the purpose of judicial economy, we elect to address the substantive merits of this case as they relate to both Bearcat and MLGC. See *In re Estate of Eggleston*, 266 Mich App 105, 114; 698 NW2d 892, 898 (2005). See also *Thompkins v Zamler*, unpublished per curiam opinion of the Court of Appeals, issued March, 19, 2020 (Docket No. 345138), p 2 (noting a party's failure to raise an issue in the questions presented in their brief on appeal and referencing *River Investment Group*, but electing to address the issue because it was generally discernable from the party's brief).

novel presumption operates to require that a plaintiff, when opposing a defendant that invokes this presumption, must show more than the prima facie case required under MCL 436.1801[(1)].” *Reed v Breton*, 475 Mich 531, 533; 718 NW2d 770 (2006). To rebut the presumption, a plaintiff must provide clear and convincing evidence of visible intoxication at the establishment which served the alleged intoxicated individual (AIP). *Id.* at 540-541. MLGC is entitled to the presumption; Bearcat, as the last retail licensee to serve Dennis, is not.

In *Reed*, the Court held that the plaintiff failed to overcome the presumption because the evidence “could not even meet the competent and credible standard for rebutting the presumption to show service to a visibly intoxicated person.” *Id.* at 542. The Court stated:

> This standard of “visible intoxication” focuses on the objective manifestations of intoxication. *Miller v Ochampaugh*, 191 Mich App 48, 59–60; 477 NW2d 105 (1991). While circumstantial evidence may suffice to establish this element, it must be actual evidence of the visible intoxication of the allegedly intoxicated person. Other circumstantial evidence, such as blood alcohol levels, time spent drinking, or the condition of other drinkers, cannot, as a predicate for expert testimony, alone demonstrate that a person was visibly intoxicated because it does not show what behavior, if any, the person actually manifested to a reasonable observer. These other indicia—amount consumed, blood alcohol content, and so forth—can, if otherwise admissible, reinforce the finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance. While circumstantial evidence retains its value, such (and any other type of) evidence must demonstrate the elements required by § 801(3), including “visible intoxication.” [*Reed*, 475 Mich at 542-543.]

The plaintiff in *Reed* failed to present evidence of the AIP’s visible intoxication at the time of service in the defendant’s facility. All four eyewitnesses indicated that they did not see signs of intoxication. *Id.* at 543. Addressing the plaintiff’s circumstantial evidence, the Court stated:

> Plaintiffs further relied on two expert toxicologists’ expectations that Breton would have exhibited signs of intoxication. But reports discussing Breton’s physical statistics and alcohol consumption, coupled with predictions of his impairment, offer only speculation about how alcohol consumption affected Breton that night. Expert post hoc analysis may demonstrate that Breton was actually intoxicated but does not establish that others witnessed his visible intoxication. [*Id.* at 543.]

The Court concluded that the defendant was entitled to summary disposition because the plaintiff failed to establish a genuine issue of material fact of visible intoxication. *Id.*

At this juncture, we first conclude that the trial court erred in overturning Judge Servitto’s grant of summary disposition to MLGC. None of the eyewitnesses, including Dennis’s three golf companions and an MLGC bartender, testified that they observed visible intoxication on Dennis’s part. Moreover, upon review of the video evidence, we observe no indications of visible intoxication. We note that plaintiff’s assertions to the contrary are, to say the least, overstated. Moreover, plaintiff’s reliance on the amount of alcohol Dennis consumed during his approximately eight hours at MLGC is largely speculative and entirely circumstantial, and absent any direct

-11-

evidence of visible intoxication, cannot sustain an action against MLGC, let alone an action whereby plaintiff must rebut with clear and convincing evidence the presumption that MLGC did not violate MCL 436.1801(1). See *Reed*, 475 Mich at 540-541.

We note, as did Judge Servitto when he granted summary disposition to Bearcat, that the viability of plaintiff's case against Bearcat is a closer issue. As noted, Bearcat, as the last retail licensee to serve Dennis, is not entitled to the rebuttable presumption. Additionally, where the expert testimony concerning Dennis's blood-alcohol content and the paramedic's testimony concerning the smell of alcohol emanating from Dennis was not probative of Dennis's visible intoxication at MLGC, it is certainly more probative of his intoxication at BWW.[4] However, with all of the evidence in mind, we agree with Judge Servitto's initial recognition of that fact that no witnesses testified to Dennis's visible intoxication at BWW, nor does the video evidence indicate visible intoxication.[5] With that in mind, we are inclined to conclude that Bearcat was entitled to summary disposition. See *Reed*, 475 Mich at 542-543 (indicating that blood-alcohol content and other circumstantial indicia of intoxication "can, if otherwise admissible, reinforce the finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance").

Plaintiff refers us to *Dines v Henning*, 184 Mich App 534; 459 NW2d 305 (1990), rev'd 437 Mich 920 (1991), wherein the AIP, also referred to as the decedent, caused his own death when he crashed his car after drinking at the defendant bar. Before going to the bar, the AIP drank with three friends at a private residence. The AIP then drove the friends to a bar, but one of the friends left the group because the AIP had been driving erratically. The AIP and his two remaining friends, Boyd Baltrip and Kenneth Wylie, went to a bar to drink and play pool. According to Baltrip, the AIP was loud in the bar, but showed no other signs of intoxication. When they left, the AIP drove erratically and ignored his companions' requests to slow down. Baltrip testified that he had frequently seen the AIP intoxicated and frequently saw him drive erratically. *Id*. at 536-537. According to Wylie, the AIP was not loud and "did not exhibit any outward signs of intoxication." The AIP drove too fast and laughed at his friends' requests to slow down. Wylie also testified that he frequently saw the AIP intoxicated and frequently saw him drive erratically. *Id*. at 537-538. The plaintiffs supported their claim with an expert's affidavit "indicating that someone with the decedent's blood-alcohol level, who is not a chronic drinker, will manifest visible signs of intoxication over ninety percent of the time." *Id*. at 538. A majority of this Court

---

[4] The paramedic indicated he could smell alcohol on Dennis immediately upon arrival at the crash site, which was little more than 12 minutes after Dennis left BWW.

[5] Plaintiff points to the fact that Dennis spilled a beer while at BWW, but both a companion of Dennis and the server at BWW testified that this action did not indicate to them at the time that Dennis was visibly intoxicated. See *Baragwanath Estate v AMC Sault Ste Marie, Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2021 (Docket No. 348628), p 3 (indicating in a factually similar case that the AIP spilling a drink at the dramshop defendant's establishment did not itself establish visible intoxication where a witness "testified that he did not have the impression at the time that she spilled it as a result of intoxication"). Moreover, in addition to the server and Dennis's two companions, a BWW manager testified that she did not witness visible signs of intoxication on Dennis's part.

held that the plaintiffs' evidence was insufficient to withstand summary disposition. This Court stated that the AIP had no difficulty driving to the bar, that there was no evidence that the bar's employees observed his loudness, and that Baltrip and Wylie denied that the decedent appeared intoxicated before he arrived at the bar. *Id*. at 539.

One judge dissented. Stating that "[e]yewitness testimony of visible intoxication is not required to establish a dramshop claim," he concluded that the evidence was sufficient to establish a genuine issue of material fact. *Dines*, 184 Mich App at 540-541 (KELLY, J., dissenting). The dissent opined that the "decedent's maniacal driving prior to going to the bar and after leaving the bar, certainly indicated that he was drunk, and probably visibly so." *Id*. at 541. The dissent further stated:

> Although a chronic drunkard may not have indicated visible signs of intoxication with that level of blood alcohol, I believe that the question of whether decedent was a chronic drunkard is an inference to be drawn by the jury rather than by the trial court or the Court of Appeals on review. [*Id*.]

Our Supreme Court reversed this Court's judgment "for the reasons stated in the dissent in the Court of Appeals." *Dines v Henning*, 437 Mich at 920 (1991).

Plaintiff is correct to refer to *Dines* for the proposition that actual intoxication may be proven through circumstantial evidence, but plaintiff ignores the caveat that "it must be actual evidence of the *visible* intoxication of the allegedly intoxicated person." *Reed*, 475 Mich at 542, 542 n 12, citing *Dines*, 184 Mich App at 540-541 (KELLY, J., dissenting). In *Dines*, there was eyewitness testimony that the AIP had been intoxicated prior to even arriving at the drampshop defendant's establishment. *Dines*, 184 Mich App at 541 (KELLY, J., dissenting). A witness who was a passenger in the vehicle driven by the AIP indicated that the AIP had been driving erratically prior to arrival at the defendant's bar. *Id*. In fact, the AIP had been driving so erratically that the witness "demanded" to be let out of the car because "he did not want to get killed." *Id*. Another witness testified that he ultimately left the defendant's bar with the AIP because the AIP and another friend were "too loud and boisterous," indicating the AIP's level of intoxication at the time. *Id*. And, while *Dines* also involved evidence of blood-alcohol content and related expert testimony, unlike the case at hand, that evidence was supplementary to the otherwise actual evidence of "*visible* intoxication." *Reed*, 475 Mich at 542. [6]

---

[6] Relatedly, plaintiff argues on cross-appeal that Judge Servitto erred in his initial determination by declining to consider plaintiff's experts' affidavits as evidence that Dennis was visibly intoxicated when defendants served him alcohol. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion, but the court's "preliminary legal determinations of admissibility" are reviewed de novo. *Nashal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018) (quotation marks and citation omitted). MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

With all of the above in mind, we conclude that both MLGC and Bearcat were entitled to summary disposition, and Judge Marlinga therefore erred in revisiting and reversing Judge Servitto's former grant of the same.

We reverse in both appeals.

/s/ Karen M. Fort Hood
/s/ Michael F. Gadola
/s/ Anica Letica

---

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In determining dramshop liability, "[a] person is visibly intoxicated when the person's intoxication would be apparent to an ordinary observer." *Miller v Ochampaugh*, 191 Mich App 48, 59–60; 477 NW2d 105 (1991). This standard focuses "on the objective manifestations of intoxication." *Reed*, 475 Mich at 542. Expert interpretation of subtle signs such as Dennis tugging at his shorts before sitting down is incongruent with the ordinary-observer standard. The trial court correctly described the incongruency as a "non sequitur." By way of example, Dr. Shiener's expert opinion "retro-extrapolating" Dennis's blood-alcohol content at 7:40 p.m. from other data could appropriately be considered because it involved scientific knowledge assisting the trier of fact in understanding the evidence. In contrast, expert opinion interpreting Dennis's behavior for signs of visible intoxication that could go unnoticed by a lay person is inconsistent with the ordinary-observer standard. Accordingly, these are distinct uses of expert testimony, one permissible, and one impermissible. Suffice it to say, we discern no error on Judge Servitto's part.

-14-