*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEVRY GRAHAM,

       Plaintiff-Appellant,

v

SHAWN ALTADONNA, GREENWICH TIME, INC., and THE KEEP,

       Defendants-Appellees.

UNPUBLISHED
August 12, 2021

No. 351516
Wayne Circuit Court
LC No. 18-001623-NO

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

In this dramshop action, plaintiff appeals as on leave granted[1] the trial court's orders granting summary disposition in favor of defendants Greenwich Time, Inc., ("Greenwich") and The Keep.[2] On appeal, plaintiff argues that the trial court erred by granting summary disposition in favor of Greenwich and The Keep because there was sufficient circumstantial evidence and associated inferences that defendant Shawn Altadonna was visibly intoxicated when he was served alcohol at Greenwich and The Keep. We affirm.

After work on Friday, April 21, 2017, Altadonna went to Greenwich for some food and drinks. He finished eating around 8:00 p.m. or 9:00 p.m., at which time his wife, Elizabeth Altadonna, and her friend, Patrick Ballnik, joined him at Greenwich. Altadonna testified that he drank one 12-ounce beer and a double shot of whiskey. Neither Elizabeth nor Ballnik saw Altadonna exhibit any signs of visible intoxication, and Altadonna did not consider himself to be

---

[1] After this Court denied plaintiff's application for leave to appeal, *Graham v Altadonna*, unpublished order of the Court of Appeals, entered March 6, 2020 (Docket No. 351516), our Supreme Court remanded for consideration as on leave granted. *Graham v Altadonna*, 506 Mich 945; 949 NW2d 723 (2020).

[2] Because the issue in the trial court and on appeal is solely whether Greenwich and The Keep face any dramshop liability, any references to "defendants" relates only to Greenwich and The Keep.

-1-

visibly intoxicated. The manager of Greenwich testified that he did not remember Altadonna visiting Greenwich that night, but he did not receive any reports that Altadonna was visibly intoxicated. The two servers who worked at Greenwich on the night in question averred that Altadonna "conducted himself appropriately," and that they never observed him demonstrating signs of visible intoxication. Before the manager's deposition, he spoke with the two servers about that night, and from what the manager gathered, neither server could remember what Altadonna had to drink

About 30 minutes after Elizabeth and Ballnik joined Altadonna at Greenwich, the trio left and went next door to The Keep. At The Keep, Altadonna was served one old fashioned, which generally contains two ounces of whiskey. At The Keep, Elizabeth and Ballnik did not observe that Altadonna was visibly intoxicated and Altadonna did not consider himself to be visibly intoxicated. The manager of The Keep did not remember Altadonna from that night, but his staff did not report any incidents of "unruly" behavior.

At 11:48 p.m., Altadonna paid his tab at The Keep and left. Altadonna got into his own car while Elizabeth drove Ballnik in her car. Both cars drove north on I-75. At 11:56 p.m., Altadonna rear-ended the vehicle that plaintiff was driving, resulting in injuries to plaintiff and Altadonna. After the accident, Elizabeth stopped her vehicle on the shoulder and told Altadonna to get in the backseat of her vehicle.

At 12:40 a.m., Michigan State Police Trooper Larry Cobb was dispatched to the scene of the accident and interviewed Altadonna. Based on Trooper Cobb's training and experience as a police officer, he observed that Altadonna was visibly intoxicated. Altadonna had bloodshot, watery eyes and slurred speech. Additionally, Altadonna had difficulty standing and had to lean against a vehicle. Although not belligerent, Altadonna was not coherent. When Trooper Cobb asked for Altadonna's driver's license, Altadonna could not find it, despite it being visible to Trooper Cobb. Altadonna admitted to Trooper Cobb that he had two 20-ounce beers[3] before driving. Trooper Cobb administered a preliminary breath test at 12:43 a.m., which registered a blood-alcohol content ("BAC") of 0.204. Trooper Cobb arrested Altadonna[4] and brought him to Detroit Receiving Hospital. At the hospital, blood draws at 5:05 and 5:06 a.m. yielded a BAC of 0.152.

Plaintiff retained an expert, Dr. Bryan S. Judge, who authored a report concerning whether Altadonna would have been visibly intoxicated on the night of the accident on the basis of his BAC. Dr. Judge concluded that Altadonna would have been visibly intoxicated while he was at Greenwich and The Keep. Using computer software, Dr. Judge determined that, given Altadonna's height, weight, and reported drinking history, Altadonna's BAC would have been 0.169 at 9:44 p.m., 0.199 at 11:11 p.m., and 0.236 at the time of the accident. Because signs of visible intoxication normally begin at a BAC of 0.150, Dr. Judge opined "it very unlikely that

---

[3] The manager of Greenwich testified that it does not serve the type of beer that Altadonna admitted to drinking on draft. Instead, the beer only comes in 12-ounce bottles.

[4] Altadonna was criminally charged with two counts of operating while intoxicating causing serious injury, MCL 257.625(5). He pleaded no contest to the charges.

[Altadonna] didn't display any signs of intoxication at either establishment," notwithstanding the deposition testimony to the contrary. Further, Dr. Judge concluded that "it is not possible to reach a blood ethanol concentration of 0.236 after drinking" the number of alcoholic drinks that Altadonna testified he drank. Finally, Dr. Judge determined that Altadonna's intoxication was the primary cause of the accident.

Plaintiff filed an amended complaint, asserting that Altadonna negligently drove his vehicle and caused the accident and plaintiff's injuries. The amended complaint also asserted claims of dramshop liability against Greenwich and The Keep. Thereafter, Greenwich and The Keep each filed a motion for summary disposition, arguing that plaintiff failed to provide any evidence that Altadonna was visibly intoxicated when he was served alcohol. Plaintiff responded by arguing that Trooper Cobb observed that Altadonna was visibly intoxicated at the scene of the accident and the retrograde extrapolation analysis in the BAC report confirmed that Altadonna would have been visibly intoxicated while at Greenwich and The Keep. Following a hearing on the motions, the trial court granted summary disposition in favor of Greenwich and The Keep. This appeal followed.

Plaintiff argues that the trial court erred by granting defendants' motions for summary disposition because there was sufficient circumstantial evidence and reasonable inferences to establish that Altadonna was visibly intoxicated when Greenwich and The Keep served him alcohol. We disagree.

This Court reviews de novo a trial court's decision on a motion under MCR 2.116(C)(10). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). This Court "review[s] a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

The dramshop liability act provides that "[a] retail licensee shall not directly or indirectly, individually or by a clerk, agent, or servant sell, furnish, or give alcoholic liquor to an individual who is visibly intoxicated." MCL 436.1801(1). "[A]n individual who suffers damage or who is personally injured by a . . . visibly intoxicated person by reason of the unlawful selling, giving, or furnishing of alcoholic liquor to the . . . visibly intoxicated person, if the unlawful sale is proven to be a proximate cause of the damage, injury, or death, or the spouse, child, parent, or guardian of that individual, has a right of action in his or her name against the person who by selling, giving, or furnishing the alcoholic liquor has caused or contributed to the intoxication of the person or who has caused or contributed to the damage, injury, or death." MCL 436.1801(2). "There is a rebuttable presumption that a retail licensee, other than the retail licensee who last sold, gave, or furnished alcoholic liquor to the minor or the visibly intoxicated person, has not committed any act giving rise to a cause of action under subsection (2)." MCL 436.1801(7). To rebut this presumption, a plaintiff must present clear and convincing evidence of visible intoxication at the establishment. *Reed v Breton*, 475 Mich 531, 540-541; 718 NW2d 770 (2006). Greenwich is entitled to this presumption, but The Keep is not.

"A person is visibly intoxicated when the person's intoxication would be apparent to an ordinary observer." *Miller v Ochampaugh*, 191 Mich App 48, 57; 477 NW2d 105 (1991).

> This standard of "visible intoxication" focuses on the objective manifestations of intoxication. While circumstantial evidence may suffice to establish this element, it must be actual evidence of the visible intoxication of the allegedly intoxicated person. Other circumstantial evidence, such as blood alcohol levels, time spent drinking, or the condition of other drinkers, cannot, as a predicate for expert testimony, alone demonstrate that a person was visibly intoxicated because it does not show what behavior, if any, the person actually manifested to a reasonable observer. These other indicia—amount consumed, blood alcohol content, and so forth—can, if otherwise admissible, reinforce the finding of visible intoxication, but they cannot substitute for showing visible intoxication in the first instance. While circumstantial evidence retains its value, such (and any other type of) evidence must demonstrate the elements required by [MCL 436.1801(2)], including "visible intoxication." [*Reed*, 475 Mich at 542-543 (citation and footnotes omitted).]

The question on appeal is whether plaintiff presented evidence to create an issue of fact regarding whether Altadonna was visibly intoxicated when he was served alcohol by Greenwich and The Keep. Altadonna testified that he did not consider himself to be visibly intoxicated while at the bars. Similarly, Elizabeth and Ballnik testified that Altadonna did not appear to be visibly intoxicated. Elizabeth specifically denied that Altadonna slurred his speech, had bloodshot, watery eyes, had delayed responses, appeared drowsy, or lost his balance while at Greenwich or The Keep. Ballnik testified that he did not have any concerns about Altadonna driving home from The Keep. Further, two Greenwich employees, who could have served Altadonna, each submitted affidavits stating that he was not visibly intoxicated.

Plaintiff's evidence showing that Altadonna was visibly intoxicated at Greenwich and The Keep was Trooper Cobb's testimony and the BAC report. Trooper Cobb testified that he arrived at the scene of the accident at 12:41 a.m., approximately 45 minutes after the accident occurred and 53 minutes after Altadonna paid his tab at The Keep. But Trooper Cobb only observed Altadonna's appearance and behavior *at the scene of the accident*; as Trooper Cobb readily admitted, he did not observe Altadonna at Greenwich or The Keep, and had no way of knowing whether Altadonna was visibly intoxicated at the bars. Thus, Trooper Cobb's testimony does not establish that Altadonna was visibly intoxicated when he was served at Greenwich and The Keep. See *Reed*, 475 Mich at 543 (emphasis added) (stating that the plaintiffs "presented no evidence of Breton's visible intoxication *at the time he was served* at defendant's establishment . . . .").

Turning to the BAC report, this is precisely the type of circumstantial and inferential evidence that "cannot substitute for showing visible intoxication in the first instance." *Id*. The report concluded that Altadonna must have been visibly intoxicated while at Greenwich and The Keep because a retrograde extrapolation analysis of his BAC from the breathalyzer and blood tests estimated that his BAC would have been 0.169 at Greenwich and 0.199 at The Keep, and "non-alcoholic individuals" display signs of intoxication around a BAC of 0.150. Dr. Judge concluded that "[w]hile no one who encountered Mr. Altadonna at The Greenwich or The Keep remembered him to be visibly intoxicated, I find it very unlikely that he didn't display any signs of intoxication

while at either establishment." This report only speculates that Altadonna would have been visibly intoxicated while at Greenwich and The Keep. See *id*. ("But reports discussing [the allegedly intoxicated person's] physical statistics and alcohol consumption, coupled with predictions of his impairment, offer only speculation about how alcohol consumption affected [the person] that night. Expert post hoc analysis may demonstrate that [a person] was *actually* intoxicated but does not establish that others witnessed his *visible* intoxication."). See also *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 381; 928 NW2d 227 (2018) (stating that conjecture or speculation is insufficient to create an issue of material fact). Accordingly, the BAC report, without other first-instance evidence, does not establish that Altadonna was visibly intoxicated when he was served at Greenwich or The Keep.

Plaintiff cites a number of cases for the proposition that eyewitness testimony of a person's visible intoxication is not necessary because circumstantial evidence can suffice. Although plaintiff's assertion is correct, the circumstantial evidence "must be actual evidence of the *visible* intoxication of the allegedly intoxicated person." *Id*. at 542. Here, plaintiff has not provided any circumstantial evidence that Altadonna was visibly intoxicated, such as erratic driving before arriving at the bars, *Dines v Henning*, 184 Mich App 534, 541; 459 NW2d 305 (1990) (KELLY, J., dissenting), rev'd 437 Mich 920 (1991), or having difficulty in keeping one's eyes open, slurring speech, and stumbling, *Miller*, 191 Mich App at 52. Because there was no evidence that Altadonna acted or appeared to be intoxicated, there was no circumstantial evidence of his visible intoxication.

Although not raised by plaintiff, we note that the apparent discrepancy among the number of alcoholic drinks that Altadonna admitted to drinking (technically five with one double-shot of whiskey and one old fashioned each having about two standard drinks[5]), the number of drinks that Trooper Cobb reported that Altadonna said he drank (two 20-ounce beers, which is three and one-third standard drinks), and the number of alcoholic drinks the BAC report concluded he must have consumed to reach such a high BAC (13, plus or minus three, standard drinks) does not create an issue of material fact. This discrepancy is not material to defendants' dramshop liability because it is irrelevant to whether Altadonna was visibly intoxicated while at Greenwich or The Keep. See

---

[5] One standard drink is 12 ounces of beer or 1.5 ounces of liquor. National Institute on Alcohol Abuse and Alcoholism, *What Is A Standard Drink?* <https://www.niaaa.nih.gov/alcohols-effects-health/overview-alcohol-consumption/what-standard-drink> (accessed August 10, 2021).

We also note that the receipt from The Keep shows that Altadonna paid for three drinks. However, as the Keep's manager testified, there is no way to know who drank what drink. Further, although the manager said that he would look for additional receipts that were paid by Elizabeth or Ballnik, there is no evidence that he located any additional receipts.

*West*, 469 Mich at 183 ("A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ."); *Reed*, 475 Mich at 537-538 (noting that dramshop liability arises when an establishment serves alcohol to a visibly intoxicated person).

Affirmed.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly